STATE of Wisconsin, Plaintiff-Respondent,

v.

Gabriel L. ORTIZ, Defendant-Appellant.

Court of Appeals

*No. 00–3390–CR. Submitted on briefs June 22, 2001.—Decided August 22, 2001.*

2001 WI App 215

(Also reported in 634 N.W.2d 860.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eileen A. Hirsch*, assistant public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J. Gabriel L. Ortiz appeals from the restitution provision of a judgment of conviction and from a postc onviction order upholding the restitution order. The judgment directs Ortiz to reimburse the city of Racine for overtime costs incurred by the city's police department, SWAT team, and negotiating team as the result of a police standoff with Ortiz. We reverse the restitution provision of the judgment and the postconviction order.

## BACKGROUND

¶ 2. The underlying facts are not in dispute. On November 7, 1999, the Racine police were dispatched to Ortiz's residence in response to a family dispute call from Ortiz's sister. When the police arrived, Ortiz's sister reported that the matter had been resolved peacefully. The police left.

¶ 3. About one-half hour later, the police again responded to a call from Ortiz's sister who reported that Ortiz had attacked her. When the police arrived, Oritz's sister stated that Ortiz had struck her in the face and

ripped the telephone out of the wall. She also stated that Ortiz was upstairs in the residence with his pit bull dog and a knife.

¶ 4. The police directed Ortiz's sister to go upstairs and tell Ortiz to come down and speak with them. She did so, but returned saying that Ortiz refused to speak or leave the residence. The police then entered the residence and confronted Ortiz, who had his pit bull dog at his side. The police asked Ortiz to put the dog in its kennel and to speak with them. Ortiz refused and threatened the police with his dog if they did not leave the residence.

¶ 5. The police withdrew from the residence and set up surveillance around the perimeter. Ortiz continued to refuse to exit the residence and shouted threats at the police from an upstairs window. Eventually, the police summoned a SWAT team and a negotiating team. In addition, the police brought Ortiz's mother to the scene. She spoke with Ortiz but failed to persuade him to leave the residence. The police also placed a portable phone in the doorway for Ortiz to use, but he threw it back at them. Some hours later, the police used tear gas to force Ortiz out of the residence and he was arrested.

¶ 6. The criminal complaint and later information charged Ortiz with four counts: failure to comply with an officer's attempt to take a person into custody by remaining in a building while armed with a dangerous weapon pursuant to Wis. Stat. § 946.415(2) (1999–2000);[1] obstructing an officer while armed pursuant to Wis. Stat. §§ 946.41(1) and 939.63(1)(a)1; disorderly conduct while armed pursuant to Wis. Stat. §§ 947.01 and 939.63(1)(a)1; and threatening to injure

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

another while armed pursuant to Wis. Stat. §§ 943.30(1) and 939.63(1)(a)3. A jury convicted Ortiz of all of the charges.

¶ 7. At sentencing, the State sought restitution to the city in the amount of $9409.46, representing the overtime costs of the police department and the SWAT and negotiating teams. In response, Ortiz challenged the amount of the requested restitution and his ability to pay, but not the trial court's authority to make such a restitution order. The trial court sentenced Ortiz to three years in the state prison on the threat to injure while armed charge. As to the other counts, the court imposed and stayed sentences and placed Ortiz on probation. In addition, the court ordered Ortiz to pay restitution to the city in the amount requested by the State.

¶ 8. Post conviction and represented by new counsel, Ortiz challenged the legality of the restitution provision.[2] Ortiz argued that the order was invalid under *State v. Schmaling*, 198 Wis. 2d 756, 761, 543 N.W.2d 555 (Ct. App. 1995), where the court of appeals invalidated a restitution order because it sought to compensate a governmental entity which was a passive victim of the defendant's criminal conduct. The State responded that the order was valid under *State v. Howard-Hastings*, 218 Wis. 2d 152, 153–54, 579 N.W.2d 290 (Ct. App. 1998), where the court of appeals upheld

---

[2] In his postconviction motion, Ortiz also alleged that his trial counsel was ineffective on various grounds. However, Ortiz's challenge to the restitution order was not based on ineffective assistance of counsel. Instead, Ortiz directly challenged the restitution order, contending that it was void ab initio because the trial court did not have the authority to issue the order.

a restitution order in favor of a governmental unit where the defendant had vandalized government property.

¶ 9. Although the trial court did not expressly invoke *Howard-Hastings*, the court ordered restitution. The court distinguished *Schmaling*, noting that here the police were the direct targets of Ortiz's criminal conduct and, as such, the police were the actual victims of Ortiz's offenses. Ortiz appeals.

## *DISCUSSION*

### *Waiver*

■

¶ 10. The State first argues that Ortiz has waived his restitution challenge because he did not contest the trial court's authority to make the restitution order at the sentencing. Instead, Ortiz first raised the issue via his postconviction motion.

■

¶ 11. Ortiz responds that the issue cannot be waived because it goes to the question of the trial court's authority to act in the first instance. However, we need not answer Ortiz's argument because, even assuming the issue could be waived, we nonetheless choose to address it. We do so for three reasons. First, waiver is a rule of judicial administration, not one of an appellate court's authority to address an issue. *See Wirth v. Ehly*, 93 Wis. 2d 433, 444, 287 N.W.2d 140 (1980). Thus, we sometimes choose to address a waived issue in the interests of judicial economy where the matter is of statewide importance or interest. *Schmaling*, 198 Wis. 2d at 762–63. This case differs factually from *Schmaling* and *Howard-Hastings*. As such, our decision will advance the law on this issue.

¶ 12. Second, assuming Ortiz did not timely object to the order in the trial court, neither did the State argue waiver when Ortiz first raised the issue in his postconviction motion. Instead, the State opposed the motion on substantive grounds.[3] Therefore, unlike most waived issues, we have the benefit of the parties' trial court debate on the matter, and, most importantly, we have the benefit of the trial court's reasoning on the question. *See State v. Madlock*, 230 Wis. 2d 324, 329, 602 N.W.2d 104 (Ct. App. 1999).

¶ 13. Third, the issue is one of law involving statutory construction of the restitution statute. *See Schmaling*, 198 Wis. 2d at 760. Where the parties have fully briefed the legal issue and there are no factual issues, the appellate courts will sometimes overlook waiver. *Wirth*, 93 Wis. 2d at 444.

¶ 14. For these reasons, we reject the State's waiver argument and choose to address the issue on the merits.

## *Restitution*

¶ 15. As we have noted, the legality of the trial court's order presents a matter of statutory construction of the restitution statute, Wis. Stat. § 973.20. We review this question de novo without deference to the trial court. *Schmaling*, 198 Wis. 2d at 760. However, despite this standard of review, we value the court's reasoning on such a matter. *See Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 475, 507 N.W.2d 163 (Ct. App. 1993). This is so even where, as here, we disagree with the court's ruling.

---

[3] Nor did the trial court invoke waiver against Ortiz.

¶ 16. Restitution in criminal cases is governed by Wis. Stat. § 973.20 which imposes a mandatory duty on the sentencing court to order restitution to the victim of a crime.[4] *Schmaling*, 198 Wis. 2d at 760. "The statute also requires the defendant to '[p]ay all special damages . . . substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of the crime.' Section 973.20(5)(a)." *Schmaling*, 198 Wis. 2d at 760.

¶ 17. In *Schmaling*, the defendant was convicted of crimes stemming from a motor vehicle accident resulting in the death of another. *Id.* at 758–59. The trial court ordered the defendant to make restitution to Racine county for firefighter and clean-up costs resulting from the accident. *Id.* at 758. We overturned that ruling. *Id.* Relying on *State v. Evans*, 181 Wis. 2d 978, 512 N.W.2d 259 (Ct. App. 1994), we held that even though public money was expended in dealing with the consequences of the defendant's criminal conduct, "none of [the crimes] were committed against [the county]." *Schmaling*, 198 Wis. 2d at 762. We thus concluded that neither the public, nor its alter ego, the county, was an "actual victim" of Schmaling's crimes within the meaning of Wis. Stat. § 973.20(1). *Schmaling*, 198 Wis. 2d at 761.

¶ 18. In *Howard-Hastings*, the defendant was convicted of criminal damage to property owned by the United States. *Howard-Hastings*, 218 Wis. 2d at 154.

---

[4] WISCONSIN STAT. § 973.20(1r) provides in pertinent part:

When imposing sentence . . . for any crime, the court . . . shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing or, if the victim is deceased, to his or her estate, unless the court finds substantial reason not to do so and states the reason on the record.

After violating a condition of probation requiring that she stay off of government property, the defendant's probation was revoked. *Id.* The ensuing sentence included a provision directing the defendant to pay restitution to the government for the property damage. *Id.*

¶ 19. The defendant challenged the restitution order on appeal. *Id.* at 153–54. The court of appeals identified the issue as "whether the term 'victim' in § 973.20, Stats., includes governmental entities." *Howard-Hastings*, 218 Wis. 2d at 153–54. The defendant argued that *Schmaling* stood for the proposition that a governmental entity can never be a victim for purposes of the restitution statute. *Howard-Hastings*, 218 Wis. 2d at 157. The *Howard-Hastings* court disagreed, saying that *Schmaling* merely addressed whether a governmental entity "can be a 'victim' even if it is not the direct victim." *Howard-Hastings*, 218 Wis. 2d at 158. Using the dictionary definition and related sections of the statutes that defined "victim," the *Howard-Hastings* court concluded that a governmental entity could qualify as a "victim" for purposes of the restitution statute. *Id.* at 156. And since the defendant's vandalism had caused direct harm to the governmental property, the court concluded, "It is clear that the United States government was the actual victim of Howard-Hastings's acts of vandalism." *Id.* at 157.

■

¶ 20. The collective effect of *Schmaling* and *Howard-Hastings* is the following. A governmental entity can, in the appropriate case, be a victim entitled to restitution. (*Howard-Hastings*). Where the defendant's conduct indirectly causes damage or loss to the governmental entity, the entity is a passive, not a direct, victim and is not entitled to restitution. (*Schmaling*). Conversely, where the defendant's conduct di-

rectly causes damage or loss to the governmental entity, the entity is a direct or actual victim and is entitled to restitution. (*Howard-Hastings* and *Schmaling*).

¶ 21. We see this case as falling between *Schmaling* and *Howard-Hastings*. On the one hand, the linkage between the overtime costs and Ortiz's conduct is not as direct as in *Howard-Hastings* where the defendant's vandalizing conduct was targeted directly at government property and directly damaged the property. Here, Ortiz's conduct was targeted at the law enforcement personnel involved in the standoff, but the conduct did not cause any loss, harm or damage to any law enforcement personnel or property. On the other hand, the linkage between the overtime costs and Ortiz's conduct is more direct than in *Schmaling* where the firefighters and clean-up crew were called to the scene after the motor vehicle accident. Here, as the trial court correctly found, Ortiz's conduct was targeted directly at the police and, as such, the police were the direct and actual victims of Ortiz's conduct.

¶ 22. Ironically, it is this very finding by the trial court that compels us to disagree with the court's restitution ruling. While we recognize that the police were the agents of the city, the fact remains that it was the police, not the city, who were the direct and actual victims of Ortiz's crimes. Ortiz did not threaten to injure the city—he threatened to injure the police officers. Ortiz did not fail to comply with an attempt by the city to take him into custody—he failed to comply with the police effort to take him into custody. Ortiz did not obstruct the city—he obstructed the police. And finally, Ortiz's disorderly conduct was not targeted at the city—it was targeted at the police. Comparing this case to *Schmaling*, the police here were akin to the

motor vehicle accident victim (entitled to restitution) while the city was akin to the county (not entitled to restitution).

¶ 23. In carrying out his criminal activities, Ortiz fortunately did not cause any damage, loss or harm to the law enforcement personnel. Were it otherwise, those persons would be direct or actual victims and would have valid restitution claims for such direct losses. And if the city had absorbed those losses, it might also be a direct or actual victim and entitled to restitution under *Schmaling* and *Howard-Hastings*. But that is not the situation before us. The police, not the city, were the actual victims of Ortiz's offenses. As such, the city cannot recoup its collateral expenses in apprehending Ortiz.[5]

¶ 24. Although the facts of this case make for a closer question than in *Schmaling*, we nonetheless see this case as governed by *Schmaling*. We reverse the restitution provision of the judgment and that portion of the postconviction order denying Ortiz's request to vacate the restitution provision in the judgment.[6]

---

[5] The State cites to cases from other jurisdictions in support of its argument that the city is a victim for purposes of the restitution statute. Were we writing on a clean slate, we would address these decisions. But we conclude that *State v. Schmaling*, 198 Wis. 2d 756, 543 N.W.2d 555 (Ct. App. 1995), and *State v. Howard-Hastings*, 218 Wis. 2d 152, 579 N.W.2d 290 (Ct. App. 1998), provide the proper framework for our resolution of this case.

[6] Since we hold that the city was not a victim within the meaning of Wis. Stat. § 973.20(1r), we reject the city's related argument that the restitution was appropriate as an item of "special damage" under § 973.20(5).

We also reject the State's alternative argument that the restitution was valid as an item of cost relating to Ortiz's arrest

¶ 25. We conclude by addressing the State's alternative argument that we should uphold the restitution order as a "reasonable and appropriate" condition of probation pursuant to WIS. STAT. § 973.09(1)(a) and *State v. Connelly*, 143 Wis. 2d 500, 421 N.W.2d 859 (Ct. App. 1988). We note that the State did not make this argument in the trial court. Nonetheless, we may address a respondent's argument that is otherwise waived if the respondent seeks to uphold the trial court's ruling and the argument does not require any fact-finding. *See State v. Holt*, 128 Wis. 2d 110, 124–26, 382 N.W.2d 679 (Ct. App. 1985).

¶ 26. Despite our authority under *Holt*, we choose not to address the issue given the history of this case. We do so because the trial court did not defend the restitution order as a condition of probation when Ortiz brought the issue to the fore in the postconviction proceeding. It strikes us that if the court had intended the restitution order as a condition of probation, the court would have said so in its postconviction ruling. Instead, the court addressed the issue as a straight restitution order under *Schmaling* and the restitution statute, WIS. STAT. § 973.20.

---

pursuant to WIS. STAT. § 973.06(1)(a). In *State v. Peterson*, 163 Wis. 2d 800, 472 N.W.2d 571 (Ct. App. 1991), the State sought to recover as costs certain special expenses relating to the use of an electronic wire surveillance device used to investigate and arrest the defendant. *Id.* at 801–02. The court of appeals held that such expenses were "general internal operating expenses" that were not recoverable as costs relating to the arrest and prosecution of the defendant. *Id.* at 804. The same rationale applies here. The overtime expenses were incurred in the normal course of the police operation to investigate and apprehend Ortiz.

¶ 27. We recognize that the amended judgment of conviction recites the restitution provision as a condition of probation. But where there is conflict between a trial court's unambiguous oral pronouncement and a written judgment, the oral pronouncement controls. *State v. Perry*, 136 Wis. 2d 92, 114, 401 N.W.2d 748 (1987).[7] We decline to address the State's alternative argument.

### CONCLUSION

¶ 28. We hold that the city was not an actual or direct victim of Ortiz's criminal conduct. As such, the trial court was without authority to order restitution for the overtime expenses incurred by the city in investigating and apprehending Ortiz. We also reject the State's alternative arguments.

*By the Court.*—Judgment and order reversed.

---

[7] We recognize that here the trial court's oral pronouncement came after, rather than before, the written judgment. Nonetheless, the pronouncement reflects the authority under which the court issued the restitution order. We conclude that we must give that pronouncement its intended effect.