STATE of Wisconsin, Plaintiff-Respondent,

v.

William A. ROUSE, Defendant-Appellant.†

Court of Appeals

*No. 01–0774–CR. Submitted on briefs December 7, 2001.—Decided April 11, 2002.*

2002 WI App 107

(Also reported in 647 N.W.2d 286.)

† Petition to review denied 7-26-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Morris D. Berman* of *Berman Law Office*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sandra L. Nowack*, assistant attorney general.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. DYKMAN, J. William Rouse appeals from an order denying his postconviction motion to vacate the portion of his sentence ordering him to pay restitution to Wisconsin Community Bank. Rouse argues that the court was without authority to order the restitution because it was based, in part, on the time that the bank's salaried employees spent assisting police in researching Rouse's crime, and therefore, the bank did not demonstrate that it paid out any additional expenses as a result of his conduct. Because we conclude that Wis. Stat. § 973.20(5)(a) (1999–2000)[1] authorizes a circuit court to order restitution based on a victim employer's lost employee time, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

## Background

¶ 2. The State charged William Rouse with nine counts of forgery under Wis. Stat. § 943.38. It alleged that Rouse had forged a series of checks in amounts ranging from $2.14 to $460.68 over a period of approximately two weeks. Rouse later pleaded no contest to and was convicted of one count of forgery. The circuit court dismissed the remaining counts, but concluded that they would be read in for purposes of sentencing. *See* Wis. Stat. § 973.20(1g)(b). At the sentencing hearing, the State requested, among other things, that Rouse be ordered to compensate Wisconsin Community Bank, the bank of the two individuals who were Rouse's victims, for the time the bank's employees spent researching the forgery allegations.

¶ 3. Ultimately, the court sentenced Rouse to seven years in prison, but stayed the sentence and placed Rouse on probation. The court agreed with the State's suggestion and ordered Rouse to "make payment of restitution" to Wisconsin Community Bank in the amount of $1,000 "for their work."

¶ 4. Rouse moved for postconviction relief, challenging the portion of the sentence ordering him to pay $1,000 to the bank. Rouse asserted in his motion that the restitution order "was not supported by any evidence in the record that the purported loss actually occurred or was caused by the actions of the defendant." At a postconviction hearing, the bank offered a document itemizing the expenses it had incurred as a result of Rouse's forgeries. According to the document, the bank incurred $61.20 in phone and fax expenses, $22.50

763

in copy expenses, $103.25 in "miscellaneous expenses,"[2] and $684.00 in labor. More specifically, the bank claimed that its Vice President of Operations, its Assistant Vice President, and an administrative assistant spent a total of twenty-four hours researching the forgery allegation. In total, the bank claimed $870.95 in expenses. The bank's Vice President of Operations, Curtis Schwerin, gave testimony consistent with the document.

¶ 5. On cross-examination, Schwerin admitted that he, the assistant vice-president, and the administrative assistant were all salaried employees, and that although the investigation caused Schwerin to work more hours than he otherwise would have, the bank did not pay Schwerin or the other employees extra for the time they spent investigating Rouse's forgeries. At the end of the hearing, the court reaffirmed its restitution order, reasoning that the bank should be compensated for "expend[ing] its resources remedying the situation that [Rouse] created rather than in doing other tasks for the benefit of the employer." The court denied Rouse's motion in an order dated March 1, 2001, but reduced the amount ordered to $702.50. Rouse appeals.

## Decision

██

¶ 6. Whether a circuit court has the authority to order restitution under a particular set of facts is a question of law that we review de novo. *State v. Holmgren*, 229 Wis. 2d 358, 366, 599 N.W.2d 876 (Ct. App. 1999). The court's authority to order restitution is

---

[2] These included setting up a new account and ordering new checks and debit cards for the victims and "loss on working income on funds in the forgery."

grounded in Wis. Stat. § 973.20. *Id.* Section 973.20(1r) provides that the sentencing court "shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing."

¶ 7. We first note that Rouse does not challenge the circuit court's restitution order on the basis that the bank was not a "victim" within the meaning of Wis. Stat. § 973.20, and therefore not entitled to receive restitution. *See, e.g., State v. Ortiz,* 2001 WI App 215, 247 Wis. 2d 836, 634 N.W.2d 860 (Ct. App.); *State v. Schmaling,* 198 Wis. 2d 756, 543 N.W.2d 555 (Ct. App. 1995). We therefore do not address this issue. Further, although Rouse in his postconviction motion challenged the full amount of the restitution that the circuit court ordered him to pay the bank, on appeal his arguments relate solely to that portion of the restitution relating to the labor expended by the bank employees in investigating Rouse's crime. We therefore conclude that Rouse has conceded that the circuit court had authority to order Rouse to pay for the bank's phone, fax and copying expenses as well as the expense in setting up new accounts and the lost interest.

¶ 8. In asserting that the circuit court was authorized to order Rouse to pay restitution to the bank for the time its employees spent investigating the forgeries, the State points to Wis. Stat. § 973.20(5), which provides in part:

> In any case, the restitution order may require that the defendant do one or more of the following:
>
> (a) Pay all special damages, but not general damages, substantiated by evidence in the record, which

could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.

(b) Pay an amount equal to the income lost, and reasonable out-of-pocket expenses incurred, by the person against whom a crime considered at sentencing was committed resulting from the filing of charges or cooperating in the investigation and prosecution of the crime.

The State argues that the restitution ordered to the bank can be properly classified as either "special damages" or "out-of-pocket expenses" under the statute, and therefore must be upheld on appeal. We have defined special damages as those "representing the victim's actual pecuniary losses" as opposed to general damages, which are those "not readily susceptible to direct proof or easily estimable," and include pain and suffering and injury to reputation. *State v. Stowers*, 177 Wis. 2d 798, 804–05, 503 N.W.2d 8 (Ct. App. 1993). Rouse argues that the bank had no damages or expenses because it did not pay its employees any more than it otherwise would have.

¶ 9. Both parties rely on *Holmgren* to support their positions. In *Holmgren*, the defendant was convicted of employee theft after he charged various items and expenses to his employer that were unrelated to his job. 229 Wis. 2d at 363. The circuit court ordered Holmgren to pay restitution to his employer for various expenses, including about $17,500 for auditing expenses that the employer incurred while investigating Holmgren's misconduct. *Id.* at 363–64. We affirmed the order with respect to the auditing expenses, reasoning: "[T]he audit was done to ascertain the extent of Holmgren's wrongdoing. Thus, the audit's cost was an

766

expenditure necessitated by Holmgren's crime and is a special damage that could be recovered in a civil proceeding." *Id.* at 372.

¶ 10. We agree with Rouse that, unlike his case, the investigating expenses in *Holmgren* were incurred as the result of an audit conducted by an outside accounting firm, comprised of individuals who were not regular employees of the victim employer. *Id.* at 363. We are reluctant, however, to adopt a rule that would determine whether a victim could receive restitution for investigating expenses based solely on whether it performed the research through an outside firm or with its own employees. Rouse points to language in *Holmgren* that he contends would require such a result. Specifically, in describing special damages under WIS. STAT. § 973.20(5)(a), *Holmgren* stated: "Any readily ascertainable pecuniary expenditure paid out because of the crime is appropriate as special damages." 229 Wis. 2d at 365.

¶ 11. There is no dispute that the bank did in fact "pay out" salaries to its employees for the time they spent researching the forgeries. We agree with Rouse, however, that their salaries were not paid "because" of his misconduct—they would have been paid regardless. We have held that a circuit court may not order restitution unless there is causal nexus between the damage incurred and the crime considered at sentencing. *State v. Canady*, 2000 WI App 87, ¶ 9, 234 Wis. 2d 261, 610 N.W.2d 147. The victim must show that the defendant's conduct was a "substantial factor" in causing the damage. *State v. Madlock*, 230 Wis. 2d 324, 333, 602 N.W.2d 104 (Ct. App. 1999).

¶ 12. Although it is true that Rouse's crime was not the cause of the bank's employees being paid their

salaries, Rouse does not dispute that his conduct was a substantial factor in causing them to investigate his forgeries rather than perform other tasks. Viewed in this light, the damage incurred by the bank was not the payment of additional wages, but rather the loss of the value of its employees' services for the time that they were diverted from doing other work. Although *Holmgren* noted that special damages included "paid out" expenses, it also noted that the ultimate issue under Wis. Stat. § 973.20(5)(a) is whether a loss is "a special damage that could be recovered in a civil proceeding." 229 Wis. 2d at 372. The issue, then, is whether an employer could recover for its employees' lost time as special damages in a civil action. We conclude that it could.

¶ 13. Most courts that have considered the issue have concluded that a plaintiff can recover the value of employees' lost services as damages in a contract or tort action, even when it had not shown that it incurred additional expenses or lost profits. *See, e.g., Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1150 (3d Cir. 1990); *Dunn Appraisal Co. v. Honeywell Info. Sys.*, 687 F.2d 877, 884 (6th Cir. 1982); *Convoy Co. v. Sperry Rand Corp.*, 672 F.2d 781, 785–86 (9th Cir. 1982); *United States v. CBS, Inc.*, 103 F.R.D. 365, 370 (C.D. Cal. 1984); *Stahl Mgt. Corp. v. Conceptions Unlimited*, 554 F. Supp. 890, 895 (S.D.N.Y. 1983); *Vmark Software, Inc. v. EMC Corp.*, 642 N.E.2d 587, 594–95 (Mass. Ct. App. 1994); *Charleston Lumber Co. v. Miller Housing Corp.*, 458 S.E.2d 431, 437 (S.C. Ct. App. 1995). Courts in these cases have consistently rejected the argument that an employer is not entitled to recover because the employee would have received the same pay regardless of the defendant's conduct. The court in *Convoy* stated: "The issue is not whether [the plaintiff] would have paid the

supervisors' salaries if the defendant had not breached the contract, but whether the breach deprived [the plaintiff] of the services it paid for." 672 F.2d at 785.[3]

¶ 14. Although we have never decided this issue directly, we held in *Patrick v. Head of the Lakes Co-op. Elec. Ass'n.*, 98 Wis. 2d 66, 295 N.W.2d 205 (Ct. App. 1980), that an insured was entitled to recover for lost employee time under a policy that obligated the insurer to pay for the reasonable expenses, including lost earnings, incurred in assisting the defense of a claim. *Id.* at 73. Echoing the logic of *Convoy*, we reasoned: "The question is not whether an employee lost wages, but whether the [insured] sustained a loss because it had to pay wages to employees for time spent in the litigation as opposed to working at Cooperative business." *Id.*

¶ 15. The same reasoning applies here. As the circuit court noted, while the bank's employees were investigating Rouse's forgeries, they were prevented from doing other work for the bank, and thus the bank lost all value of their services during that time. We decline to require that victims demonstrate lost profits as this would be overly burdensome and would fail to adequately recognize the value inherent in an employee's services. The deprivation of an employee's productivity is a loss in itself that may or may not have

---

[3] *But see Cashman v. Allied Prods. Corp.*, 761 F.2d 1250, 1256 (8th Cir. 1985) (denying recovery for lost time when plaintiff had already recovered lost profits); *AES Tech. Sys., Inc. v. Coherent Radiation*, 583 F.2d 933, 942 (7th Cir. 1978) (holding that plaintiff could not recover for "past salaries" of employees when plaintiff testified that employees continued to work on other projects). We do not consider whether the circuit court's authority to order restitution for lost employee time would be affected if the court had already ordered a defendant to compensate the victim for lost profits.

an end result of lost profits. Requiring such a showing could deprive entities that do not work for profit any compensation for their lost resources. Further, it is reasonable to compensate an employer for this loss with the amount that it paid the employees during the time they were diverted.

¶ 16. In sum, we conclude that the circuit court was authorized under Wis. Stat. § 973.20(5)(a) to order Rouse to pay restitution to Wisconsin Community Bank for the time its employees spent researching Rouse's forged checks. This conclusion is supported by other states with similar restitution statutes that have held that it is appropriate to order defendants to pay for a victim's lost employee time, *see State v. Marquez*, 912 P.2d 390, 392–93 (Or. Ct. App. 1996),[4] and also by Wisconsin case law that has recognized an individual's lost time as an appropriate consideration in determining the amount of restitution. *See State v. Kennedy*, 190 Wis. 2d 252, 261, 528 N.W.2d 9 (Ct. App. 1994). Rouse has not argued that the amount of time spent by the bank's employees was unreasonable or otherwise challenged the reasonableness of the order. We therefore need not consider that issue.[5]

---

[4] Oregon Revised Statute 137.106 authorizes a court to order restitution for crime victims when the defendant's conduct has "resulted in pecuniary damages." ORS 137.103(2) defines "pecuniary damages" as meaning "all special damages, but not general damages, which a person could recover against the defendant in a civil action."

[5] Because we have concluded that the circuit court was authorized to order Rouse to pay the bank restitution for its employees' lost time under Wis. Stat. § 973.20(5)(a), we need not decide the State's alternative argument, namely, that we could affirm the order on the basis that it was "a reasonable and appropriate" condition of probation under Wis. Stat.

*By the Court.*—Order affirmed.

§ 973.09(1)(a). We note, however, that there may be conflicting authority on that issue. *Compare State v. Torpen,* 2001 WI App 273, ¶ 16, 248 Wis. 2d 951, 637 N.W.2d 481 ("[W]e reject the proposition that § 973.09(1)(a) allows a court to order what is not permitted by § 973.20.") *with State v. Heyn,* 155 Wis. 2d 621, 629–30, 456 N.W.2d 157 (1990) (upholding order for defendant to pay for victim's burglar alarm even though it was not a "pecuniary loss" under previous version of § 973.20, because it could be ordered instead as a reasonable and appropriate condition of probation).