STATE of Wisconsin, Plaintiff-Respondent,

v.

Derick G. VANBEEK, Defendant-Appellant.†

Court of Appeals

*No. 2008AP1275–CR. Submitted on briefs December 11, 2008.
—Decided February 11, 2009.*

2009 WI App 37

(Also reported in 765 N.W.2d 834.)

† Petition to review denied 5/12/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender of Madison.

■

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Steven P. Means,* assistant attorney general, and *J.B. Van Hollen,* attorney general.

Before Brown, C.J., Snyder and Neubauer, JJ.

¶ 1. NEUBAUER, J. Derick G. Vanbeek was convicted of making a bomb scare at Markesan High School—intentionally conveying a false threat "to destroy any property by the means of explosives," contrary to Wis. Stat. § 947.015 (2007–08).[1] Vanbeek appeals from that portion of his judgment of conviction requiring restitution to the Markesan School District in the amount of $15,796.89 for salaries and benefits paid to teachers and staff during the resulting evacuation. Vanbeek argues that the trial court did not have the authority to require restitution to the school district because it is not the direct victim of the crime considered at sentencing for purposes of Wis. Stat. § 973.20. We reject Vanbeek's argument. We conclude that the school district was the direct victim of Vanbeek's crime —the false threat to destroy school district property by means of explosives—and, as such, the district is entitled to restitution under § 973.20 for losses it incurred. We affirm the judgment and order denying Vanbeek's postconviction motion challenging the restitution order.

## BACKGROUND

¶ 2. The facts underlying the issue on appeal are brief and undisputed. According to police reports contained in the criminal complaint, on November 27,

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

2006, a note containing a bomb threat was found in the middle school lunch room at Markesan High School at approximately 10:15 a.m.[2] As a result, the school district evacuated the building and moved students to off campus sites, losing four and one-half hours of instructional time. After being interviewed by law enforcement, Vanbeek admitted to writing the threat, but stated that he had been coerced into doing so by two other students.

¶ 3.  Vanbeek eventually pled no contest to the charge of making a bomb scare contrary to Wis. Stat. § 947.015. The trial court withheld sentence and imposed three years' probation with costs, thirty days' jail time, and 100 hours of community service. The trial court held a separate hearing on restitution and, pursuant to Wis. Stat. § 973.20(5),[3] ordered Vanbeek to pay restitution to the Markesan School District in the amount of $18,026.01, including $15,796.89 attributable to the salaries and benefits of the school's teachers and staff.

¶ 4.  Vanbeek appeals that portion of the restitution order covering salaries and benefits.[4]

---

[2] The note stated, "There is a *bomb* in locker #190 you have until 11:00." On the back of the note it said "Secret note annonous [sic]."

[3] Wisconsin Stat. § 973.20(5) provides:

In any case, the restitution order may require that the defendant do one or more of the following:

(a) Pay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing.

[4] Vanbeek does not challenge the remainder of the restitution order to be paid to the Markesan School District for the loss

## DISCUSSION

¶ 5. The issues on appeal are (1) whether the Markesan School District is a victim of Vanbeek's crime such that it is entitled to restitution under WIS. STAT. § 973.20, and (2) whether the school district suffered any pecuniary loss. Vanbeek argues that the school district is not a direct victim, and therefore the trial court did not have the authority to require restitution to the district for the salary and benefits paid to teachers and staff during the evacuation.

¶ 6. The determination of restitution is within the discretion of the trial court, subject to WIS. STAT. § 973.20. *State v. Kennedy*, 190 Wis. 2d 252, 259, 528 N.W.2d 9 (Ct. App. 1994). However, whether the trial court is authorized to order restitution under a certain set of facts, and whether a claimant is a "victim" under the statute, involves the interpretation and application of § 973.20 and is therefore a question of law that we determine de novo. *State v. Lee*, 2008 WI App 185, ¶ 7, 314 Wis. 2d 764, 762 N.W.2d 431; *State v. Howard-Hastings*, 218 Wis. 2d 152, 154, 579 N.W.2d 290 (Ct. App. 1998).

¶ 7. WISCONSIN STAT. § 973.20 governs restitution. Section 973.20(1r) provides in relevant part that the court "shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing . . . ." A "crime considered at sentencing" is defined as "any crime for which the defendant was convicted and any read-in crime." Sec. 973.20(1g)(a).

---

of food because the hot lunch program was interrupted, the retention of a bomb-sniffing dog, and time spent by staff investigating the incident.

¶ 8. As noted, Vanbeek argues that the persons occupying the school were the direct victims of his crime, and that the school district was only collaterally impacted. Vanbeek points to numerous cases which have considered whether the government (on behalf of law enforcement agencies) or police officers were direct victims, and we determined that the government claimant was not a direct victim entitled to restitution. *State v. Evans*, 181 Wis. 2d 978, 512 N.W.2d 259 (Ct. App. 1994); *State v. Schmaling*, 198 Wis. 2d 756, 543 N.W.2d 555 (Ct. App. 1995); *State v. Ortiz*, 2001 WI App 215, 247 Wis. 2d 836, 634 N.W.2d 860; *State v. Storlie*, 2002 WI App 163, 256 Wis. 2d 500, 647 N.W.2d 926; and *State v. Haase*, 2006 WI App 86, 293 Wis. 2d 322, 716 N.W.2d 526. These cases do not support Vanbeek's argument because in each case the government claimant was not a direct victim of the crime considered at sentencing.

¶ 9. For example, Vanbeek points to *Ortiz*, in which we held that the police were the direct victims of the defendants crime, and not the city government, when the city incurred overtime expenses in negotiating a standoff between the defendant and the city's police officers. *Ortiz*, 247 Wis. 2d 836, ¶¶ 1, 22, 23. Significantly, the crimes considered at sentencing were failure to comply with an officer's attempt to take a person into custody by remaining in a building while armed with a dangerous weapon; obstructing an officer while armed; disorderly conduct while armed; and threatening to injure another while armed. *Id.*, ¶ 6. While the police were agents of the city, all of Ortiz's conduct and the crimes considered at sentencing were aimed at the police, i.e., "Ortiz did not threaten to injure the city—he threatened to injure the police officers. Ortiz did not fail to comply with an attempt by the city to take him into custody—he failed to comply with the police effort to take him into custody." *Id.*, ¶ 22.

¶ 10. Similarly, in *Haase*, we held that an officer, and not the sheriff's department, was the direct victim when a squad car caught fire after the officer drove it into a field in pursuit of the defendant. *Haase*, 293 Wis. 2d 322, ¶¶ 1, 14. In *Haase*, the crime considered at sentencing was eluding an officer. "Haase's criminal conduct did not cause harm to the property of the department; he did not vandalize public property, he eluded an officer. Thus, the officers, not the department and its budget, were the direct victims of his conduct." *Id.*, ¶ 14.

¶ 11. By contrast, where the conduct involved in the crime considered at sentencing is directed at government property, the owner of that property is entitled to restitution. Thus, in *Howard-Hastings*, the government was entitled to restitution as the direct victim of the defendant's acts of vandalism where the defendant was convicted of criminal damage to property after cutting down several government owned "telephone-type poles." *Howard-Hastings*, 218 Wis. 2d at 154, 157–58; *see also Haase*, 293 Wis. 2d 322, ¶ 16 (citing favorably the analysis in *State v. Dillon*, 637 P.2d 602 (Ore. 1981), in which the court upheld a restitution order for the cost to repair a patrol car that the defendant intentionally rammed with his vehicle and for which the defendant was convicted of criminal mischief).

¶ 12. Here, Vanbeek likens the staff at the Markesan School District to the police officers in *Ortiz* and *Haase*, contending that the direct victims of his false bomb scare were those who evacuated the building, and not the school district. This argument misses the mark. Vanbeek conveyed a false threat to destroy school district property, which resulted in an evacuation and a direct

loss to the school district. There is no doubt that the conduct involved in the crime considered at sentencing —conveying a threat to destroy school district property by means of explosives—was directed at the school district. Vanbeek left the bomb scare note on school district property and the note threatened to destroy school district property.

¶ 13.   While Vanbeek contends that the actual victims were the teachers and staff because the bomb scare was false, and thus there was no actual damage to the school district's property, the same holds true for the people—there was no actual physical injury. Moreover, despite the fact that the threat to destroy property was false, the school district was clearly impacted as it resulted in the evacuation of the building and disrupted the delivery of school district services. We conclude that the school district was a direct victim of Vanbeek's conduct.[5] We therefore turn to the issue of whether the

---

[5] The other cases Vanbeek cites are, as with *State v. Ortiz*, 2001 WI App 215, 247 Wis. 2d 836, 634 N.W.2d 860 and *State v. Haase*, 2006 WI App 86, 293 Wis. 2d 322, 716 N.W.2d 526, inapposite:   in each, the government claimant was not a direct victim of the crime considered at sentencing. *See, e.g., State v. Storlie*, 2002 WI App 163, 1, 11, 256 Wis. 2d 500, 647 N.W.2d 926 (police department was not the direct victim and thus not entitled to restitution for destroyed stop sticks used to halt the defendants vehicle where the defendant was convicted of fleeing an officer and OWI); *State v. Schmaling*, 198 Wis. 2d 756, 758–62, 543 N.W.2d 555 (Ct. App. 1995) (county was not entitled to restitution for the costs of fighting a fire where the defendant caused a truck to burst into flames and the death of the driver, because county was not the direct victim of the crimes considered at sentencing—second-degree reckless homicide and second-degree reckless endangerment); *State v. Evans*, 181 Wis. 2d 978, 979, 984, 512 N.W.2d 259 (Ct. App. 1994) (defendant convicted of delivering controlled substance cannot be

school district suffered a pecuniary loss as a result of Vanbeek's crime.

¶ 14.  Vanbeek contends that even if the school district is a victim it did not suffer a pecuniary loss because "[t]he school district did not pay out any additional sum in salary and benefits than was already required under its contracts nor did the school district pay for an additional day of school." However, the rationale underlying Vanbeek's argument was previously rejected by this court in *State v. Rouse*, 2002 WI App 107, 254 Wis. 2d 761, 647 N.W.2d 286.

¶ 15.  In *Rouse*, the defendant was charged with nine counts of forgery and later pled no contest to one count of forgery. *Id.*, ¶ 2. The defendant was ordered to pay restitution to a bank for the time that its salaried employees spent assisting the police in researching his crime. *Id.*, ¶ 1. The defendant argued that the trial court lacked the authority to order restitution because the bank did not demonstrate that it paid out any additional expenses as a result of his conduct. *Id.* We rejected the defendant's argument. We concluded that the bank's loss was "a special damage that could be recovered in a civil proceeding," and therefore, fell under Wis. Stat. § 973.20(5)(a). *Rouse*, 254 Wis. 2d 761, ¶ 12. In upholding the restitution order, we explained:

> [W]hile the bank's employees were investigating Rouse's forgeries, they were prevented from doing other work for the bank, and thus the bank lost all value of their services during that time . . . . The deprivation of an employee's productivity is a loss in itself that may or may not have an end result of lost profits. Requiring such a showing could deprive entities that do not work for profit any compensation for their lost

ordered to reimburse county for lost buy money because the government was not a direct victim of the criminal conduct).

resources. Further, it is reasonable to compensate an employer for this loss with the amount that it paid the employees during the time they were diverted.

*Id.*, ¶ 15.

¶ 16. While Vanbeek concedes that the restitution order in *Rouse* was appropriate to compensate the bank, he argues that *Rouse* is distinguishable because "[a]s a private business enterprise designed to secure a profit, any additional expense incurred by the bank as a consequence of the defendant's criminal acts necessarily impacted the profits of the business." We reject Vanbeek's argument. The restitution order in *Rouse* was to reimburse the bank for the "deprivation of an employee's productivity" which is a *"loss in itself* that may or may not have an end result of lost profits." *Id.* (emphasis added).

¶ 17. We see no reason to treat the school district's loss differently. During the four and one-half hours that the students and staff were evacuated from school district property as a result of Vanbeek's bomb scare, the school district paid its employees, but received no services from them. Under *Rouse* and WIS. STAT. § 973.20(5)(a), it is entitled to restitution for that loss of employee productivity.

## CONCLUSION

¶ 18. For the reasons stated above, we conclude that Markesan School District was a direct victim of Vanbeek's crime and suffered a pecuniary loss as a result of that crime. We therefore conclude that the trial court had the authority to order $15,796.89 in restitution to the Markesan School District and properly exercised its discretion in doing so. We affirm the

challenged portion of the judgment ordering restitution to the Markesan School District and the order denying Vanbeek's motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.