COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2108-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF696

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DENNIS BELL, JR.,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: ELLEN R. BROSTROM and JEFFREY A. WAGNER, Judges. *Affirmed*.

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dennis Bell, Jr. appeals from a judgment of conviction for repeated sexual assault of a child and an order denying Bell's postconviction motion.[1] For the reasons set forth below, we affirm.

## BACKGROUND

¶2 In 2020, Mary[2] disclosed to her mother that she was repeatedly sexually assaulted by her older cousin, Bell, from the years 2005 to 2010, when Mary was roughly 11 years old until she was 16 years old. The State subsequently filed a criminal complaint charging Bell with repeated sexual assault of a child. The criminal complaint alleged that Bell had sexual intercourse with Mary "whenever he could," that Bell would "play wrestle" with Mary at family gatherings as a pretext for being able to touch her, and that Bell asked Mary to be his secret girlfriend.

¶3 As part of the pretrial proceedings, Bell sought to admit a partially nude photograph of Mary.[3] Bell argued that the photograph was evidence that Bell and Mary had a consensual sexual relationship after Mary turned 18 years old and further showed that, contrary to Mary's assertion, Mary did not try to avoid

---

[1] The Honorable J.D. Watts presided over the motion to introduce the photograph at issue on appeal. The Honorable Ellen R. Brostrom presided over Bell's trial and sentencing, entered the judgment of conviction, and ordered the restitution challenged on appeal. The Honorable Jeffrey A. Wagner entered the order denying Bell's postconviction motion. For ease of reference, we refer to each generally as the trial court.

[2] We refer to the victim in this matter using the pseudonym provided by the State. *See* WIS. STAT. RULE 809.19(1)(g) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[3] Bell also sought to admit text messages that he received from Mary, but we do not discuss this aspect of his motion further because Bell has not pursued any argument as to the trial court's decision to exclude the text messages.

Bell once she became an adult. The State opposed Bell's motion and argued that the photograph should be excluded pursuant to the rape shield law, *see* WIS. STAT. § 972.11, and the three-step test set forth in **State v. DeSantis**, 155 Wis. 2d 774, 456 N.W.2d 600 (1990). The trial court denied Bell's motion and excluded the photograph.

¶4 The case proceeded to a jury trial at which Mary, Mary's mother, and an investigating officer testified. Mary generally testified consistent with the allegations in the criminal complaint. She testified that Bell would wrestle with her at family gatherings and use that as an excuse to touch her, that Bell would take photographs of her, and that Bell would have sexual intercourse with her any time the opportunity presented itself. She explained that she delayed her disclosure until her adulthood because she was scared of what would happen if she said anything and she was disclosing now because Bell recently started a relationship with a woman who had a young daughter that Mary feared would also be assaulted if she remained silent.

¶5 Mary's mother testified that, at the time that Mary disclosed the assaults to her, Mary was crying and upset. She testified that she confronted Bell, and she described that Bell confessed and apologized profusely. She stated:

> I asked him how could he do that to her. And he immediately started apologizing and said that he feels awful, he feels incredibly bad, and—and disgusted. And he just kept saying sorry and I kept asking him, why would you do this. He would never answer the why.

The State further introduced the related text messages from Bell to Mary's mother apologizing for his behavior.

¶6    After approximately 20 minutes of deliberation, the jury found Bell guilty, and Bell was convicted of repeated sexual assault of a child. The trial court subsequently sentenced Bell to ten years of imprisonment, bifurcated as five years of initial confinement and five years of extended supervision. The trial court additionally awarded restitution in the amount of $2,380 for past treatment and $10,000 "for future psychological/psychiatric treatment."

¶7    Bell subsequently filed a postconviction motion alleging ineffective assistance of counsel. Specifically, Bell alleged that trial counsel was ineffective for failing to object to hearsay testimony from Mary's mother and the investigating officer about what Mary told them. Bell further alleged that trial counsel was ineffective for failing to call Bell's sister as a witness because she would support the assertion that Bell was never left unsupervised with Mary during the time of the alleged assaults and that Mary never told her about any assaults at the time they occurred despite having a close relationship with Mary. Bell further challenged the restitution order. The trial court denied Bell's motion without a hearing. Bell now appeals. Additional relevant facts will be noted below as necessary.

## DISCUSSION

¶8    On appeal, Bell raises three main arguments. First, Bell argues that the trial court erroneously exercised its discretion when it excluded the photograph of Mary. Second, Bell argues that the trial court erred in denying his postconviction motion alleging ineffective assistance of counsel without a hearing. Third, Bell argues that the trial court erroneously awarded restitution for what Bell characterizes as Mary's "life coaching" expenses. We address each argument in turn.

4

## I. Exclusion of the Photograph of Mary

¶9 Bell argues that the trial court erroneously excluded the photograph of Mary under the rape shield law and erroneously found that the unfair prejudice of the photograph exceeded its probative value. Bell also argues that the exclusion of the photograph violated his constitutional right to present a defense. We disagree, and we conclude that the trial court did not erroneously exclude the photograph.

¶10 WISCONSIN STAT. § 972.11(2)(b), commonly referred to as the rape shield law, provides:

> If the defendant is accused of a crime under [WIS. STAT. § 948.02], if the court finds that the crime was sexually motivated, as defined in [WIS. STAT. §] 980.01(5), any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury[.]

In other words, "[u]nder the rape shield law, introducing any evidence concerning the complainant's prior sexual history or reputation is generally barred 'regardless of the purpose.'" *State v. Sarfraz*, 2014 WI 78, ¶38, 356 Wis. 2d 460, 851 N.W.2d 235 (quoting § 972.11(2)(c)). "The law reflects the legislature's determination that evidence of a complainant's prior sexual conduct is largely irrelevant 'or, if relevant, substantially outweighed by its prejudicial effect.'" *State v. Ringer*, 2010 WI 69, ¶25, 326 Wis. 2d 351, 785 N.W.2d 448. There are three statutory exceptions to this general rule that such evidence is excluded. Sec. 972.11(2)(b)1.-3.; *Ringer*, 326 Wis. 2d 351, ¶25. On appeal, we focus on whether the photograph of Mary met the first statutory exception for "[e]vidence of the complaining witness's past conduct with the defendant." Sec. 972.11(2)(b)2.

¶11     To meet this exception, a defendant is required to show that "(i) the proffered evidence relates to sexual activities between the complainant and the defendant; (ii) the evidence is material to a fact at issue; and (iii) the evidence of sexual contact with the complainant is of 'sufficient probative value to outweigh its inflammatory and prejudicial nature'" under WIS. STAT. § 973.21(11).  *State v. Jackson*, 216 Wis. 2d 646, 659, 575 N.W.2d 475 (1998) (quoting *DeSantis*, 155 Wis. 2d at 785).  The State notes that the photograph "likely meets the low bar" of relating to sexual conduct between Bell and Mary; therefore, we assume without deciding that the photograph meets the first part of the *DeSantis* test.  However, we conclude that it does not meet the second or third parts of the test, and the trial court did not erroneously exercise its discretion in excluding the photograph.  *See State v. Nieves*, 2017 WI 69, ¶16, 376 Wis. 2d 300, 897 N.W.2d 363 ("We review a circuit court's decision to admit or exclude evidence under an erroneous exercise of discretion standard." (citation omitted)).

¶12     In reaching an application of the three-part *DeSantis* test, we recognize that the State argues the threshold matter that Bell forfeited any argument about the trial court's decision to exclude the photograph by failing to cite the three-part *DeSantis* test and develop any argument that the photograph met this test.  In reply, Bell argues that the parties and the trial court below did not use this framework in evaluating the photograph.  The record, however, reveals that the State framed its written motion in opposition to the admission of the photograph under this three-part *DeSantis* test, and while the trial court did not explicitly mention *DeSantis* in rendering its oral decision, the parties' discussion and trial court's oral ruling is readily recognizable as set within this framework.  Nevertheless, we reject the State's argument for forfeiture because Bell's argument in his opening brief is similarly recognizable as an argument made

6

within this framework given that Bell both cited the rape shield law, the exception for evidence of past conduct, and the balancing of unfair prejudice and probative value. Thus, we turn to the application of the *DeSantis* test and whether the trial court erroneously excluded the photograph of Mary.

¶13 In seeking to admit the photograph, Bell claimed that the photograph of Mary established his theory of defense that he did in fact have a sexual relationship with Mary but, contrary to Mary's assertion, the relationship was a consensual sexual relationship after Mary reached the age of 18. He further asserted that the photograph impeached Mary's assertion that she wanted nothing to do with Bell after she reached the age of 16. Assuming that the partially nude photograph relates to sexual activity between Bell and Mary, it is neither material to a fact at issue nor sufficient in probative value to outweigh its inflammatory and prejudicial nature.

¶14 "The proper inquiry under the second prong of the *DeSantis* test is to consider whether the proffered evidence 'relates to a fact or proposition that is of consequence to the determination of the action.'" *Sarfraz*, 356 Wis. 2d 460, ¶48 (citation omitted). The photograph, however, does not help answer the question of whether Bell repeatedly sexually assaulted Mary when she was a child between the ages of 11 and 16 years old by play wrestling with her, taking photographs of her, or having sexual intercourse with her. At most, the photograph would help to answer the question of whether Bell and Mary had any sort of sexual relationship after Mary turned 18 years old. However, whether Bell and Mary had a consensual sexual relationship of any sort after Mary turned 18 years old has no bearing on the issue at trial of repeated sexual assault of a child. As the State argues, a later consensual relationship would not negate prior sexual assaults while Mary was a minor. Therefore, whether Mary had a later consensual

sexual relationship with Bell after she turned 18 is frankly not relevant to the issue of whether Bell engaged in any of the alleged behavior before Mary turned 18.

¶15     Bell further argues that the photograph is relevant to determining Mary's credibility because Mary claimed to have not wanted contact with Bell after she turned 16.   While we recognize that the State disputes Bell's characterization of Mary's testimony, our conclusion remains the same.  Whether Mary wanted a relationship with Bell after she turned 18 or did not want any contact with Bell after she turned 16 sheds no light on whether Bell repeatedly sexually assaulted Mary as a child.

¶16     As to the third part of the ***DeSantis*** test where we balance the probative value of the evidence with its prejudicial nature, we start with the assumption that the evidence is prejudicial.  ***Sarfraz***, 356 Wis. 2d 460, ¶52. Indeed, "this step operates as an inverted balancing test that 'initially weight[s] the balance in favor of a determination that the evidence is inherently prejudicial' due to 'the legislature's distrust of evidence of a victim's prior sexual history.'" ***Id.*** (alteration in original; citation omitted).  Thus, "[s]atisfying this burden is far more demanding than the showing required under the second step of ***DeSantis***." ***Id.***

¶17     As the trial court recognized, the photograph has "very limited" probative value because it would, at most, suggest that Bell possessed an intimate photograph of Mary allegedly taken after Mary turned 18 and the issue at trial was repeated sexual assault when Mary was a child.   The trial court further characterized the photograph as having an "extraordinarily prejudicial and inflammatory" effect.  This very limited probative value does not outweigh the extraordinary prejudicial and inflammatory effect that the photograph would have on the jury's perception of Mary as the complaining witness in this case.  As the

8

trial court stated, "viewing a photo of the complaining witness nude from the waist up would be something that [the jury] would not be able to deal with in a rational way when weighing the evidence."

¶18    Thus, we conclude that the photograph fails to meet the exception for evidence of past conduct with the defendant, and we discern no erroneous exercise of discretion on the trial court's part in excluding the photograph.  In so concluding, we do not address whether the exclusion of this photograph violated Bell's constitutional right to a present a defense nor do we address the State's alternative argument that the trial court's decision to exclude the photograph was harmless error.  *See* **State v. Blalock**, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

## II.    Ineffective Assistance of Counsel

¶19    Next, Bell argues that the trial court erroneously denied his postconviction motion alleging ineffective assistance of counsel without a hearing. We again disagree, and we conclude that the trial court properly exercised its discretion when it denied Bell's motion without a hearing.

¶20    In reviewing Bell's postconviction motion, we must first "determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." **State v. Ruffin**, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432.  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." **State v. Allen**, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  In such a case, we review the trial court's discretion to grant or deny a hearing for an erroneous exercise of discretion.  **Id.**

9

¶21    In his postconviction motion, Bell argued that he received ineffective assistance of counsel because his trial counsel failed to object to several instances of hearsay testimony from Mary's mother and the investigating officer wherein each testified to what Mary told them.  He further argued that trial counsel was ineffective for failing to seek a jury instruction on the proper use of any hearsay testimony that was introduced at trial and that trial counsel was ineffective for failing to call a witness that would testify that Bell and Mary were never left alone together and, despite having had a close relationship with Mary, Mary never told her that Bell was doing these things to her.  We conclude that the trial court properly denied Bell's motion without a hearing because the record conclusively demonstrates that Bell cannot show that his counsel was ineffective.

¶22    "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel."  *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must establish two elements to demonstrate that he received ineffective assistance of counsel: (1) "that counsel's performance was deficient" and (2) "that the deficient performance resulted in prejudice to the defense."  *Id.* Should the defendant fail to establish one prong, we need not address the other. *See State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).  In this case, we conclude that the record conclusively demonstrates that Bell cannot show prejudice.

¶23    The record reflects an overwhelming amount of evidence at trial to support Bell's guilt.  Mary herself testified as to the details of the assaults, the pictures that Bell would take, and how it made her feel.  The State further introduced evidence in the form of testimony from Mary's mother and text messages from Bell about phone conversations and text messages in which Bell

confessed and apologized. As the trial court described in denying Bell's motion, "[t]he victim's mother provided some of the strongest corroborating evidence of the victim's allegations, not because of the hearsay regarding the victim's statements, but due to her testimony about the defendant's reactions[.]" The trial court continued that Bell's reaction "amount[ed] to a confession. Innocent men don't apologize for sexually assaulting underage girls. They don't admit to feeling 'incredibly horrible'; admit to having feelings of 'guilt,' 'disgust,' or 'shame'; or admit that they 'only have [themselves] to blame.'"

¶24 In light of this evidence, the record conclusively demonstrates that Bell was not prejudiced by any alleged deficiency in trial counsel's performance by failing to object to any alleged hearsay testimony, failing to request a limiting instruction, or failing to call the witness that Bell identifies in his postconviction motion. The trial court, therefore, did not erroneously exercise its discretion when it denied Bell's motion without a hearing.

### III. Restitution for "Life Coaching" Expenses

¶25 Finally, Bell argues that the trial court erroneously awarded restitution for what he describes as life coaching expenses, both past and future. Bell argues that the restitution statute, *see* WIS. STAT. § 973.20, does not authorize the trial court to award restitution for life coaching fees and, if it does, there is no credible evidence in the record to support the amount awarded.

¶26 On this matter, we first note that Bell failed to raise any argument in his reply brief to refute the argument made by the State in its response brief. We, therefore, consider Bell's argument conceded. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a

concession). However, for the sake of completeness, we address the merits of Bell's argument below.

¶27 We review the trial court's restitution award both independently and as an exercise of discretion. "The scope of the trial court's authority to order restitution is a question of statutory interpretation." *State v. Hoseman*, 2011 WI App 88, ¶12, 334 Wis. 2d 415, 799 N.W.2d 479. Thus, whether "the trial court is authorized to order restitution under a certain set of facts" is a question of law that we review de novo. *State v. Vanbeek*, 2009 WI App 37, ¶6, 316 Wis. 2d 527, 765 N.W.2d 834. However, the trial court has discretion "in deciding on the amount of restitution and in determining whether the defendant's criminal activity was a substantial factor in causing any expenses for which restitution is claimed." *Hoseman*, 334 Wis. 2d 415, ¶13 (citation omitted). Accordingly, this part of our review is for an erroneous exercise of discretion.

¶28 The restitution statute states that a court "shall order the defendant to make full or partial restitution … to any victim of a crime considered at sentencing … unless the court finds substantial reason not to do so and states the reason on the record." WIS. STAT. § 973.20(1r). "[T]he purpose of restitution is to return the victims to the position they were in before the defendant injured them, and we construe the restitution statute broadly and liberally to allow victims to recover their losses resulting from the defendant's criminal conduct." *State v. Holmgren*, 229 Wis. 2d 358, 366, 599 N.W.2d 876 (Ct. App. 1999) (citation omitted).

¶29 As noted, Bell argues that the trial court had no authority under the restitution statute to award restitution for what he argued were past and future life coaching expenses. He further argues that, if it did have such authority, the award is not supported by the record. By contrast, the State contends that the trial court

12

had the authority to award restitution for both past and future life coaching expenses under WIS. STAT. § 973.20(4m) and (5) and the trial court's award was supported by Mary's testimony. We agree with the State.

¶30 Pursuant to WIS. STAT. § 973.20(4m) in the restitution statute, upon a violation of WIS. STAT. § 948.02 and other similar types of violations, "if the court finds that the crime was sexually motivated, … the restitution order may require that the defendant pay an amount, not to exceed $10,000, equal to the cost of necessary professional services relating to psychiatric and psychological care and treatment." The life coaching fees awarded as restitution fall under the umbrella of "professional services relating to psychiatric and psychological care and treatment." There is no requirement that this award be for treatment from a state licensed psychologist or psychiatrist, as Bell contends. The award must simply be for "professional services" related to "psychiatric and psychological care and treatment." Mary's life coaching constitutes a professional service related to her psychiatric and psychological treatment, and therefore, the trial court had the authority to award restitution for life coaching expenses under § 973.20(4m).

¶31 Additionally, the restitution statute may require the defendant to "[p]ay all special damages, but not general damages, substantiated by evidence in the record, which could be recovered in a civil action against the defendant for his or her conduct in the commission of a crime considered at sentencing." WIS. STAT. § 973.20(5)(a). Bell argues that the trial court had no authority here to award expenses for life coaching as special damages. However, special damages "as used in the criminal restitution context encompass 'harm of a more material or pecuniary nature' and represent the victim's actual pecuniary losses.'" *Holmgren*, 229 Wis. 2d at 365 (citation omitted). "Any readily ascertainable pecuniary

expenditure paid out because of the crime is appropriate as special damages." ***Id.*** Expenses for life coaching clearly fits within this definition when the need for the life coaching was necessitated by Bell's crimes. Therefore, the trial court also had authority to award restitution for life coaching expenses under § 973.20(5)(a).

¶32 Finally, Bell argues that the record does not support the trial court's awarded amount of restitution. However, Mary testified at the restitution hearing that she was receiving services from Dr. Berry. She testified that she had already paid $2,380 "out-of-pocket" and the services she has received related to her reporting of the sexual assaults and her overly restrictive parenting style that has resulted from "the crimes that [she] testified about at trial." She additionally testified that she was continuing treatment with Dr. Berry and Dr. Berry referred her to additional psychiatric services for anxiety and depression. She testified that she was currently seeing Dr. Berry one to two times per week and Dr. Berry's rate was $125 per hour. Based on this testimony, we discern no erroneous exercise of discretion in the amount of the restitution awarded.

## CONCLUSION

¶33 In sum, we conclude that the trial court did not erroneously exclude the photograph of Mary, properly denied Bell's postconviction motion alleging ineffective assistance of counsel, and properly awarded restitution. We, therefore, affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.