STATE of Wisconsin, Plaintiff-Respondent,†

v.

Earl W. HAASE, Defendant-Appellant.

Court of Appeals

*No. 2005AP987–CR. Submitted on briefs October 11, 2005.
—Decided April 27, 2006.*

2006 WI App 86

(Also reported in 716 N.W.2d 526.)

† Petition to review denied 9-21-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Glenn L. Cushing*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Deininger, JJ.

¶ 1. DYKMAN, J. Earl Haase appeals from an order of restitution following his conviction for two counts of first-degree reckless endangering safety, *see* WIS. STAT. § 941.30(1) (2003–04),[1] and one count each of eluding an officer, WIS. STAT. § 346.04(3), resisting arrest, WIS. STAT. § 946.415(2), and jumping bail, WIS. STAT. § 946.49(1)(b). Haase contends the trial court erroneously exercised its discretion by ordering him to pay restitution to Dane County for the cost of a squad car that was destroyed by fire after a deputy drove the vehicle into a field while in pursuit of Haase. Because we conclude that the damage to the squad car was not a direct result of Haase's criminal conduct, we reverse that portion of the order requiring Haase to pay restitution for the value of the squad car.

### Background

¶ 2. The relevant facts are undisputed. On February 27, 2003, three Jefferson County Sheriff's Department vehicles approached Haase in the Jefferson

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

324

County Human Services parking lot. Haase, who had several outstanding warrants for his arrest, got in his car and fled the area. Jefferson County officers pursued Haase westbound to the county line where Dane County Sheriff's deputies took up the pursuit. The chase continued in Dane County at speeds of up to 100 miles per hour. Haase eventually tried to elude officers by driving into a farm field. Deputy Tim Tyler drove after Haase while deputies in two other vehicles stayed behind. Tyler followed Haase for approximately one-half mile into the field when the terrain became very rough. Tyler abandoned the squad car to continue his pursuit on foot. Moments later, the squad car burst into flames.

¶ 3. Haase fled to a farmhouse, then locked himself in a garage. As deputies arrived on the scene, Haase doused the inside of the garage with gasoline and threatened to set the building on fire if the deputies entered. Deputies eventually broke into the garage and released a sheriff's dog on Haase, who was holding a lighter. Deputies called off the dog, but let it loose again when Haase attempted to ignite the lighter. The dog took down Haase and the deputies subdued him.

¶ 4. As a result of these events, Haase pled guilty or no contest to two counts of first-degree recklessly endangering safety and one count each of eluding an officer, resisting arrest and jumping bail. The circuit court sentenced Haase to five years' confinement and fifteen years' extended supervision. The court also ordered restitution and asked the State to submit a request for restitution. The State sought restitution of $50,336, consisting of $1,000 payable to an insurer of two of the deputies who subdued Haase and $49,336 payable to the Dane County Sheriff's Department for the loss of Deputy Tyler's squad car. The court ordered

the restitution requested by the State. Haase appeals from the portion of the restitution order that requires him to pay the sheriff's department for the loss of the squad car.

### *Standard of Review*

¶ 5. We review an order of restitution under the erroneous exercise of discretion standard of review. *State v. Ross*, 2003 WI App 27, ¶ 53, 260 Wis. 2d 291, 659 N.W.2d 122. A circuit court erroneously exercises its discretion when its decision is based on an error of law. *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 71, 281 Wis. 2d 173, 696 N.W.2d 194. Whether the restitution statute, WIS. STAT. § 973.20, provides a circuit court with the authority to order restitution under a certain set of facts is a question of law that we review de novo. *State v. Storlie*, 2002 WI App 163, ¶ 6, 256 Wis. 2d 500, 647 N.W.2d 926.

### *Discussion*

¶ 6. Haase contends that the circuit court lacked the authority to order him to pay restitution for the value of the squad car. He asserts the court lacked this authority because the sheriff's department was not a direct victim of his criminal conduct entitled to restitution under WIS. STAT. § 973.20. He further contends the department is not entitled to restitution under the statute because the damage to the squad car was a collateral expense incurred in the normal course of law enforcement. The State argues that the circuit court properly awarded restitution because Haase's criminal conduct was a substantial factor in causing the loss. We agree with Haase.

¶ 7. WISCONSIN STAT. § 973.20(1r) provides that "when imposing sentence or ordering probation for any crime . . . the court . . . shall order the defendant to make full or partial restitution . . . to any victim of a crime considered at sentencing . . . unless the court finds substantial reason not to do so . . . ." A government agency may be a "victim" for purposes of this statute under certain circumstances. *State v. Howard-Hastings*, 218 Wis. 2d 152, 153–54, 579 N.W.2d 290 (Ct. App. 1998).

¶ 8. In *Howard-Hastings*, we determined that the federal government was a victim entitled to restitution for vandalism committed by the defendant at the site of Project ELF, an extra low frequency wave generator used to communicate with nuclear submarines. *Id.* at 154–55. Examining the common and recognized definitions of the term "victim," we concluded that these definitions did not exclude government entities. *Id.* at 156. We discussed two prior cases in which we denied restitution to a government agency, *State v. Schmaling*, 198 Wis. 2d 756, 543 N.W.2d 555 (Ct. App. 1995) (reversing order to pay restitution to city for costs of fighting a fire caused by defendant's reckless conduct), *State v. Evans*, 181 Wis. 2d 978, 984, 512 N.W.2d 259 (Ct. App. 1994) (denying reimbursement request for "buy money" lost during drug bust of defendant), and rejected Howard-Hastings' assertion that these decisions established that a government agency could not be a victim for purposes of WIS. STAT. § 973.20. *Howard-Hastings*, 218 Wis. 2d at 157–59.

¶ 9. In *State v. Ortiz*, 2001 WI App 215, ¶¶ 2–7, 247 Wis. 2d 836, 634 N.W.2d 860, the city of Racine sought reimbursement for overtime costs incurred by police officers and SWAT team members during a police

standoff involving Ortiz. We examined *Howard-Hastings* and *Schmaling* and concluded that their "collective effect" was the following:

> Where the defendant's conduct indirectly causes damage or loss to the governmental entity, the entity is a passive, not a direct, victim and is not entitled to restitution. *(Schmaling)*. Conversely, where the defendant's conduct directly causes damage or loss to the governmental entity, the entity is a direct or actual victim and is entitled to restitution. *(Howard-Hastings* and *Schmaling)*.

*Id.,* ¶ 20. Applying this framework, we determined that the police officers—and not the city itself—were the "direct and actual" victims of the standoff. *Id.,* ¶ 22. Thus, we concluded the city was not entitled to restitution for the overtime costs it incurred in the standoff.

¶ 10. In *Storlie, supra,* we reversed a trial court order requiring Storlie to reimburse the Chippewa Falls police department for the cost of damaged "stop sticks" used by officers to halt his vehicle and end a high speed chase. Examining *Howard-Hastings, Evans* and *Ortiz,* we concluded that these cases stand for two principles. First, a government agency is entitled to restitution when it is the "direct" victim of criminal conduct. *(Howard-Hastings, Ortiz). Id.,* ¶ 10. Second, a government agency is not entitled to restitution for "collateral expenses incurred in the normal course of law enforcement." *(Evans). Id.*

¶ 11. The State asserts that the two lines of cases identified in *Storlie* are divergent and proposes that we reconcile them by adopting the following rule: "A law-enforcement agency is entitled to restitution when the defendant's criminal conduct was a substantial

factor in causing a compensable loss to the agency under Wis. Stat. § 973.20."

¶ 12. We do not see how the State's proposed test reconciles the cases. We believe that the "substantial factor" standard would significantly enlarge the scope of conduct for which an agency would be entitled to restitution and thereby contravene our prior cases. For example, in *Ortiz*, the city of Racine was not a direct victim of the standoff he initiated with police, but the standoff was a substantial factor in causing the city to pay overtime wages of officers involved in the standoff. Likewise, in *Storlie*, the damaged stop sticks were a normal cost of law enforcement, but Storlie's flight from the officers was certainly a substantial factor in damaging the stop sticks. We therefore reject the State's proposed rule.[2]

¶ 13. Further, we disagree with the State's assumption that these lines of authority are conflicting and must be reconciled. *Storlie* states the applicable rule: "[T]he government is entitled to restitution for losses incurred when it is a victim as a direct result of criminal conduct, but not for collateral expenses incurred in the normal course of law enforcement." *Id.*, ¶ 10. Thus, an agency must be a direct victim of the criminal conduct to be reimbursed for a loss, but even when it is a direct victim, it may not recover collateral losses of normal law enforcement activities.

██

¶ 14. Turning to the present case, we conclude that the department was not a direct victim of Haase's

---

[2] The State cites several cases from other jurisdictions as persuasive authority for the "substantial factor" test. Because we conclude this proposed test contravenes controlling Wisconsin authority, we need not address these cases.

criminal conduct. His criminal conduct in this case—eluding an officer—did not directly cause the loss of the department's squad car. In *Ortiz*, we explained that the police officers involved in the standoff were the direct victims of Ortiz's criminal conduct, while the city was only an indirect victim and hence was not entitled to restitution. We explained that the officers were the direct victims of each of Ortiz's crimes:

> Ortiz did not threaten to injure the city—he threatened to injure the police officers. Ortiz did not fail to comply with an attempt by the city to take him into custody—he failed to comply with the police effort to take him into custody. Ortiz did not obstruct the city—he obstructed the police. And finally, Ortiz's disorderly conduct was not targeted at the city—it was targeted at the police.

*Ortiz*, 247 Wis. 2d 836, ¶ 22. Similarly, in this case, the deputies that Haase led on a dangerous, high-speed chase were the direct victims of Haase's criminal conduct. Haase's criminal conduct did not cause harm to the property of the department; he did not vandalize public property, he eluded an officer. Thus, the officers, not the department and its budget, were the direct victims of his conduct.

¶ 15. Because we conclude that the department was not a direct victim of Haase's criminal conduct under WIS. STAT. § 973.20, we need not decide whether the loss of the squad car was a collateral expense incurred in the normal course of law enforcement.

¶ 16. Finally, the State cites our analysis in *Storlie* of an Oregon Supreme Court case, *State v. Dillon*, 292 Or. 172 (Ore. 1981), which upheld a restitution order for the cost to repair a patrol car that the defendant intentionally rammed with his vehicle. *Storlie*, 256 Wis. 2d 500, ¶ 14. The State quotes the follow-

ing language that we used to distinguish *Dillon* from *Storlie*: "While a patrol car is a tool of law enforcement, it is not deployed for the purpose that it be run over and destroyed, like stop sticks." *Id.*, ¶ 14. As in *Storlie*, the Oregon case is distinguishable here as well. In *Dillon*, the government agency was a direct victim of Dillon's conduct—Dillon rammed his car into the patrol car, causing damage to the agency's property. Haase did not commit a similar crime.[3]

¶ 17. In sum, we conclude that because the Dane County Sheriff's Department was not the direct victim of Haase's criminal conduct, the department is not entitled to restitution under WIS. STAT. § 973.20 for the loss of its squad car. Accordingly, we reverse that portion of the restitution order requiring Haase to reimburse the department for the cost of the fire-destroyed vehicle.

*By the Court.*—Order affirmed in part; reversed in part.

---

[3] Because we conclude our prior cases control the outcome in this case, we do not address the State's arguments concerning various public policy reasons for allowing restitution in this case that are based on civil law tort concepts.