COURT OF APPEALS
DECISION
DATED AND FILED

May 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2211-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2016CF199**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

TRAVIS D. DELABIO,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: BRUCE E. SCHROEDER, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Travis D. Delabio appeals from a judgment of conviction for two counts arson and two counts burglary, all counts party to the crime, and from an order awarding the victim $21,500 in restitution. *See* WIS. STAT. §§ 943.02(1)(a), 943.10(1m)(a) (2019-20).[1] This appeal concerns only the restitution order, with Delabio challenging both the process for awarding restitution and the amount of the award. We hold that the circuit court retained the authority to award restitution outside the statutory timeframe and that it did not erroneously exercise its discretion in setting the amount. Accordingly, we affirm.

## BACKGROUND

¶2 In June 2016, Delabio pled guilty to the above-mentioned counts after he and an accomplice burglarized four structures (the victim's house, barn, garage, and pole barn) and set fire to two (the house and barn). In August 2016, the circuit court sentenced Delabio to five years' initial confinement and two and one-half years' extended supervision.[2] The court ordered restitution but did not set an amount, instead referring the matter to the court commissioner for a recommendation, pursuant to WIS. STAT. § 973.20(13)(c)4. For reasons unclear, the matter was not referred. Instead, in December 2016, the Department of Corrections (DOC) sent the court a letter mistakenly stating, "At sentencing, it was ordered that Restitution be determined by the [DOC]" and requesting that restitution be set at approximately $128,000. The DOC copied Delabio's trial counsel on the letter, although Delabio disputes that counsel received the letter and

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version.

[2] The sentence was on one of the burglary counts; on the remaining counts, the court imposed five years' probation to run consecutive to the sentence.

that counsel was still representing Delabio at that time. In any event, the circuit court received no objection to the DOC letter and, in January 2017, ordered restitution in the requested amount.

¶3 In November 2017, Delabio, through new (postconviction) counsel, filed a motion to vacate the restitution order. Delabio stated that he was never given the opportunity to dispute the restitution amount, and he requested a hearing to do so. The circuit court contacted the court commissioner and vacated the restitution order; the restitution hearing was rescheduled several times but was finally set for January 2019. Meanwhile, Delabio filed a postconviction motion asserting that there was no valid reason for determining restitution outside the statutory timeframe; that Delabio had been prejudiced by the delay; and that, consequently, restitution should not be ordered. *See* WIS. STAT. § 973.20(13)(c)4. (providing a ninety-day timeframe wherein, if restitution is disputed, the issue is referred to a circuit court commissioner, the commissioner hears the matter and makes a recommendation, and the circuit court determines restitution); *State v. Ziegler*, 2005 WI App 69, ¶14, 280 Wis. 2d 860, 695 N.W.2d 895 (the court may impose restitution outside the statutory timeframe upon considering whether there was a valid reason for the delay and any prejudice resulting to the defendant).

¶4 The circuit court denied Delabio's motion. The court did not address why the matter was not initially referred to the court commissioner, although it did not blame Delabio for the mistake. The court attributed the nearly two-year subsequent delay, however, primarily to Delabio's postconviction counsel. The court further found that Delabio could not show prejudice from the delay, given that the damage to the house and barn was extensively documented at the time of the crimes.

¶5      The court commissioner held the restitution hearing in January 2019. Following the presentation of evidence, the court commissioner ruled that there was insufficient evidence to support a restitution award.[3]  On de novo review, the circuit court ordered restitution for certain discrete items, in the amount of $21,500.  We will discuss additional facts below where relevant to our analysis.

## DISCUSSION

### *The Circuit Court Retained the Authority to Award Restitution Outside the Statutory Timeframe*

¶6      Where a court orders, but does not set, restitution at sentencing, WIS. STAT. § 973.20(13)(c) provides four alternative procedures for determining the amount due.  *Ziegler*, 280 Wis. 2d 860, ¶12.  Each procedure has a timeframe; § 973.20(13)(c)4., the provision at issue here, provides that the court may

> [r]efer the disputed restitution issues to a circuit court commissioner or other appropriate referee, who shall conduct a hearing on the matter and submit the record thereof, together with proposed findings of fact and conclusions of law, to the court within 60 days of the date of referral.  Within 30 days after the referee's report is filed, the court shall determine the amount of restitution on the basis of the record submitted by the referee and incorporate it into the sentence or probation order imposed.

The statutory timeframes under § 973.20(13)(c) are directory, not mandatory, meaning that the court need not vacate the restitution order whenever the award is made outside the time limit.  *See Ziegler*, 280 Wis. 2d 860, ¶14.  Instead, the court

---

[3] The court commissioner, although "not happy with having to make this type of ruling," found that there was "not enough credible, unbiased evidence to make a finding regarding the actual loss."  In that regard, the court commissioner appeared to operate under the premise that there needed to be "independent" estimates valuing the destroyed property, as opposed to simply the testimony of the victim.

may consider whether there was any valid reason for the delay and any resulting prejudice to the defendant, and impose restitution accordingly. *Id.*; *State v. Perry*, 181 Wis. 2d 43, 56-57, 510 N.W.2d 722 (Ct. App. 1993). Importantly, a restitution award may stand even where there was little or no valid reason for the delay; we have likened the court's analysis "to a balancing test" wherein the court must weigh "the length and reasons for the delay against the injury, harm or prejudice to the defendant resulting from the delay." *Ziegler*, 280 Wis. 2d 860, ¶¶17-18. We review de novo whether the circuit court had the authority to award restitution outside the statutory timeframe. *See id.*, ¶10; *State v. Haase*, 2006 WI App 86, ¶5, 293 Wis. 2d 322, 716 N.W.2d 526.

¶7 We are puzzled by how or why some of the delays occurred in this case. Delabio was sentenced in August 2016, but the restitution matter was not then referred to the court commissioner as previously ordered by the circuit court. Then, for unknown reasons, in December 2016 the DOC instead wrote to the court recommending the restitution amount. The State appears to concede that these were errors outside Delabio's control. Further puzzling is that Delabio's trial counsel was listed as his counsel of record until August 2017, at which time the public defender's office filed an order appointing postconviction counsel—yet postconviction counsel argues that the DOC and the circuit court erred in not apprising her of the status of Delabio's case prior to August 2017. In the view of postconviction counsel, other correspondences with the circuit court should have alerted it that she, and not trial counsel, represented Delabio. We are dubious of this premise but will set aside the question of blame; we will assume, without deciding, that circumstances largely or wholly outside Delabio's control delayed the restitution matter from August 2016 through August 2017.

¶8 It appears, however, that Delabio either invited or acquiesced to further delays between August 2017 and January 2019, when the restitution hearing was finally held. It is undisputed that, after the order appointing counsel was filed, postconviction counsel waited approximately two months to move to vacate the restitution order (in November 2017) and approximately nine months to challenge the delay (in a May 2018 postconviction motion). The original hearing date of May 9, 2018, was rescheduled numerous times, either on the approval or request of all parties or, in one instance, because Delabio's co-defendant lacked counsel.[4] Thus, although Delabio might bear no responsibility for the initial delay, he contributed to some portion of the later delay. We will not attempt to parcel out blame further and simply turn to whether the approximate two-year delay in holding the restitution hearing prejudiced Delabio.

¶9 We conclude that the delay did not prejudice Delabio. In fact, this is an unusual case in which the delay was likely inconsequential. To reiterate the timeline, in February 2016 Delabio burned down the victim's barn and set fire to and damaged (but did not burn down) the victim's house. Delabio pled guilty in June 2016 and was sentenced in August 2016. Had the restitution matter proceeded appropriately, the court commissioner would have held the hearing around September or October 2016. In April 2016, however, a second fire unattributable to Delabio "completely destroyed" the victim's house. Thus, the victim had a short window in which to document the damage to the house (in fact, because he lived out-of-state, he was unable to do so completely). The result is

---

[4] The appellate record does not reflect why the hearing dates were rescheduled; however, the State's brief includes entries from CCAP containing this information, and Delabio does not dispute that these entries are accurate.

that damages awarded at *any* restitution hearing, regardless of when that hearing took place, would have been limited to compensation for the destroyed barn and for any losses in the house which were clearly documented between February and April 2016. Delabio does not point to any concrete way in which the passage of time affected his own ability to represent his interests at the hearing (he does not argue, for example, that witnesses he wished to present became unavailable). We therefore conclude that any hearing occurring within the statutory timeframe would have largely resembled the belated restitution hearing, with the victim, as the only testifying witness, relying on photographs, police reports, and the like as the basis for his repair and replacement estimates.

¶10 Delabio's additional arguments on this point are unpersuasive. We conclude that the delay did not cause Delabio to reasonably rely on not having to pay restitution, given that restitution was ordered at sentencing and that a fair portion of the subsequent delay was taken up with rescheduling the eventual hearing. This is not a situation in which, in the interim, Delabio served his sentence or for some other reason might reasonably expect finality in his judgment. *Cf. Ziegler*, 280 Wis. 2d 860, ¶19. Delabio further argues that the delay somehow caused the victim to exaggerate the extent of the damages, such that the final restitution award was larger than it otherwise would have been. Standing alone, this argument is speculative and conclusory; to the extent Delabio challenges the evidentiary basis for the award, we will address that issue in the next section.

¶11 We hold that the balance lies in favor of permitting the restitution award outside the statutory timeframe. Delabio, although not wholly responsible for the delay, also was not prejudiced by it. In such case, it would be unjust to

7

categorically prohibit the victim from recovering losses stemming from Delabio's criminal conduct.

*The Circuit Court's Restitution Award was Not an Erroneous Exercise of Discretion*

¶12    Delabio next argues that the evidence does not support the circuit court's restitution award of $21,500.  The primary goal of WIS. STAT. § 973.20 is to make the victim whole, reflecting "a strong equitable public policy that victims should not have to bear the burden of losses if the defendant is capable of making restitution."  ***State v. Longmire***, 2004 WI App 90, ¶11, 272 Wis. 2d 759, 681 N.W.2d 534; *see also* ***State v. Johnson***, 2005 WI App 201, ¶14, 287 Wis. 2d 381, 704 N.W.2d 625.  Accordingly, if restitution is disputed, the victim must meet a relatively low burden to be compensated:  he or she must show that the defendant's criminal activity was a substantial factor causing pecuniary injury and must prove the amount of loss by a preponderance of the evidence. Sec. 973.20(14)(a); ***Johnson***, 287 Wis. 2d 381, ¶13;.  Moreover, the restitution hearing is not treated as a formal trial; "strict adherence to the rules of evidence and burden of proof" is not required. ***Johnson***, 287 Wis. 2d 381, ¶14.

¶13    If the victim meets his or her burden, the court may award special damages (that is, compensation for readily ascertainable pecuniary losses), which in the case of property damage encompasses repair or replacement costs or the value of the property on a specified date.  WIS. STAT. § 973.20(2)(am)2., (5)(a); ***Longmire***, 272 Wis. 2d 759, ¶14 (citation omitted).  As relevant here, in determining the amount of restitution, the court shall consider the amount of the victim's loss, the defendant's financial resources, the defendant's present and future earning ability, and "[a]ny other factors" it "deems appropriate."  Sec. 973.20(13)(a).

¶14 We review the restitution award for an erroneous exercise of discretion. *Johnson*, 287 Wis. 2d 381, ¶10. Thus, we will uphold the award where the circuit court "logically interpreted the facts, applied the proper legal standard and used a demonstrated, rational process to reach a conclusion that a reasonable judge could reach." *Id.*

¶15 On de novo review, the parties stipulated to the circuit court's considering the transcript from the hearing before the court commissioner. At that hearing, the victim was the only witness. He presented exhibits itemizing the costs to repair or replace household items and to rebuild the barn. Because the victim lived out-of-state, he was unable to visit the property after the initial damage but before the house burned down completely in April 2016. In addition, his house was uninsured. These combined circumstances meant that he was unable to obtain certain appraisals and estimates before the second fire. To generally determine which household items were damaged or destroyed, he used photographs his daughter took and records from law enforcement. He relied on his own construction background to estimate construction costs and on internet searches to determine the costs of household items. The parties also stipulated that the assessed value of the barn was $19,200. The victim calculated losses of approximately $61,000 for the house, $106,000 for materials for the barn, and $57,000 for construction labor.

¶16 Like the court commissioner, the circuit court determined that many of the claimed losses were too "uncertain" to allow for restitution but that the victim's proof was sufficient to support the following losses, totaling $21,500:

1. $9300 for the destruction of the barn, "given [the victim's] claim of its special construction and the damage to the remaining concrete base."

2. $1800 for "irreparable damage to the pool table."

3. $500 for a gun cabinet.

4. $3200 for fireplace smoke damage.

5. $2900 for drape and hardware smoke damage.

6. $2600 for smoke damage requiring repainting.

7. $1200 partial reimbursement for the necessity to raze the barn.

¶17     We, too, find sufficient support in the record for this award.  For these items, the victim explained how he was able to ascertain damage and estimate cost.[5]  For example, after determining that the pool table was damaged (possibly by water, when firefighters put out the fire), the victim "looked up online what pool tables were going for on Ebay and other places and to be reasonable … came up with" the estimate for that type of "regulation size pool table with a slate top."  There was no requirement that an expert or third party provide this estimate. *Cf. Mayberry v. Volkswagen of America*, 2005 WI 13, ¶42, 278 Wis. 2d 39, 692 N.W.2d 226 ("Wisconsin case law is clear that an owner of property may testify as to its value and that such testimony may properly support a jury verdict for damages, even though the opinion is not corroborated or based on independent factual data.")  And although not required to do so, Delabio did not offer any evidence undermining or rebutting the victim's (he did not show, for example, that a comparable pool table, gun rack, etc., could be purchased for less).  Thus, the

---

[5] The exception was the cost the victim actually paid to raze both buildings ($8600). Delabio was not responsible for the second fire, which destroyed the house, so the restitution order could not include that raze cost.  Based on the property record, these buildings had similar square footages; perhaps this is why the victim, in his estimates, apportioned the cost equally between house and barn.  The circuit court erred on the side of caution and awarded $1200 for the cost to raze the barn.  We find that this was not an erroneous exercise of discretion, as it is undisputed that some portion of the raze cost necessarily fell to the barn.

circuit court did not erroneously exercise its discretion in concluding by a preponderance of the evidence that restitution should be awarded for these losses in these amounts.

¶18 Delabio makes several arguments to the contrary, all of them unpersuasive. Delabio asserts that the circuit court did not determine that the victim's losses were substantially caused by Delabio. *See Johnson*, 287 Wis. 2d 381, ¶13. But this finding is implicit in the restitution decision, in which the court considered which items were compensable and concluded,

> I suspect that [the victim] suffered additional losses at the hands of these defendants, but their uncertain character precludes me from awarding restitution for them. That is due primarily to the lack of occupancy so I cannot exclude the possibility that some of the damage to the property may have been due to wear and tear or damage caused by others.

¶19 Delabio further points out that the victim gave "multiple discrepant" estimates of losses at various points prior. In Delabio's view, therefore, the victim was not credible. The victim explained, however, why some of his earlier estimates may have been different; for example, the district attorney's office asked him to give an estimate "just before the sentencing" but he "couldn't get a contractor," so he did the best he could. To the extent the court considered the victim's past discrepant estimates relevant, it nonetheless determined that the victim had proved his losses; as discussed above, we cannot conclude that the court erroneously exercised its discretion in doing so.

¶20 Delabio also argues that, in making its award, the circuit court applied a burden of proof lower than the "preponderance of the evidence" standard. This argument is difficult to follow, but it appears that Delabio reached

this conclusion by picking out selective passages from the court's decision. On review of the complete decision, we find no basis for his position.

¶21 Finally, Delabio argues that the court erroneously exercised its discretion by not considering "mitigating factors in determining restitution." The court's decision, however, weighed all the relevant factors under WIS. STAT. § 973.20(13)(a). In addition to the amount of the victim's loss, the court considered Delabio's resources and earning capacity. The court acknowledged that Delabio had had a difficult life, but concluded that he would eventually be able to earn income through full-time employment sufficient to pay the award. To the extent the court ignored other so-called mitigating factors, such as childhood trauma, it was because those considerations, standing alone, were irrelevant to setting restitution.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.