COURT OF APPEALS
DECISION
DATED AND FILED

November 22, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP618-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF2373

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DAVID K. HALL,

    DEFENDANT-APPELLANT.

       APPEAL from an order of the circuit court for Dane County: NICHOLAS McNAMARA, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

       Before Blanchard, Graham, and Nashold, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. David Hall appeals a restitution order following his conviction for theft by contractor. Hall contends that the circuit court erred in its restitution awards to two of the victims, R.A. and J.S. We conclude that the court erred by including in its award to R.A. costs that are not recoverable as restitution. Accordingly, we reverse the restitution award as to R.A. and remand for a new hearing to determine the proper amount of restitution due to R.A. We also conclude, however, that the court properly exercised its discretion in awarding restitution to J.S. We therefore affirm the restitution award as to J.S.

## BACKGROUND

¶2 The State charged Hall with twenty-three criminal offenses related to Hall's work as a contractor. Hall pled no contest to four counts of felony theft by contractor and three counts of misdemeanor theft by contractor, and the remaining counts were dismissed but read in for sentencing. The court withheld sentence and imposed six years of probation.

¶3 Multiple victims of Hall's criminal conduct requested restitution. As relevant to this appeal, Hall disputed the restitution requests by two of the victims, R.A. and J.S. The circuit court held a contested restitution hearing.

¶4 After the restitution hearing, the circuit court issued a written decision resolving the disputes over restitution as to R.A. and J.S. The court awarded R.A. $11,793.33, which was the amount that the court found R.A. had paid in total for his home improvement project above the amount that Hall had promised the project would cost. The court awarded J.S. $4,039.30 for work that J.S. paid for but which Hall did not complete, plus $5,427.50 for a lien against J.S.'s home by a subcontractor.

2

¶5      Hall appeals the restitution awards to R.A. and J.S.  We set forth additional relevant facts in the Discussion section.

## DISCUSSION

¶6      Wisconsin's criminal restitution statute, WIS. STAT. § 973.20 (2021-22),[1] "governs restitution in criminal cases."  *State v. Longmire*, 2004 WI App 90, ¶11, 272 Wis. 2d 759, 681 N.W.2d 534.  "[W]e are to 'construe the restitution statute broadly and liberally in order to allow victims to recover their losses [that occur] *as a result of a defendant's criminal conduct*.'"  *Id.* (second alteration in original; quoted source omitted).  However, "§ 973.20(5)(a) limits the items of damages that a sentencing court may order a convicted defendant to pay as restitution in a criminal case to a victim's pecuniary losses attributable to the defendant's criminal conduct."  *See id.*, ¶15.  Thus, "before a [circuit] court may order restitution, 'there must be a showing that the defendant's *criminal activity* was a substantial factor in causing' pecuniary injury to the victim."  *Id.*, ¶13 (quoted source omitted).

¶7      Additionally, WIS. STAT. § 973.20(5)(a) limits recoverable restitution to "special damages ... which could be recovered in a civil action against the defendant for [the defendant's] ... conduct in the commission of [the] crime."  "The term 'special damages' as used in the criminal restitution context, means '[a]ny readily ascertainable pecuniary expenditure paid out because of the crime.'"  *Longmire*, 272 Wis. 2d 759, ¶14 (alteration in original; quoted source omitted).

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶8     We review a circuit court's restitution award for an erroneous exercise of discretion. *See* ***State v. Wiskerchen***, 2019 WI 1, ¶18, 385 Wis. 2d 120, 921 N.W.2d 730.  A court has erroneously exercised its discretion if it "applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts." ***Id.***  The victim has the burden to prove the amount lost as a result of the crime, WIS. STAT. § 973.20(14)(a), and the defendant has the burden to prove "whether an offset should be allowed and in what amount," ***Longmire***, 272 Wis. 2d 759, ¶16.  Whether costs included in a restitution order fall within the statutory limitations of what a court may order is a question of law that this court reviews de novo. ***State v. Haase***, 2006 WI App 86, ¶5, 293 Wis. 2d 322, 716 N.W.2d 526.

*R.A.*

¶9     Hall contracted with R.A. to build a porch and two decks for $24,394.  R.A. paid Hall $21,953 toward the project.  Hall completed some, but not all, of the project.  R.A. requested $13,319 in restitution.  R.A. calculated that amount by subtracting the $8,634 that he agreed that Hall spent on materials for the project from the $21,953 that R.A. had paid to Hall.

¶10    R.A. also testified that he spent an additional $14,234.33 to complete the project, which included $5,800 that R.A. paid to Hall's subcontractor, Dennis Yapp, for work that Yapp had done on the project and for which Yapp claimed he had not been paid.

¶11    Hall testified that he had, in fact, paid Yapp in full for all the work Yapp did on the project, and Hall submitted cashed checks showing that he paid Yapp a total of $4,794.  Hall also testified that he had labor costs for his own work

on R.A.'s project, and he submitted records showing that the value of his labor on R.A.'s project was $1,800.

¶12     The circuit court awarded R.A. $11,793.33 in restitution.  The court calculated restitution to R.A. as follows:  "[T]he fraud committed by Mr. Hall with respect to [R.A.] cost [R.A.] $11,793.33 more than if Mr. Hall had fulfilled the contract….  [R.A.] ended up having to pay a total of $36,187.33 ($21,953 to Hall, plus $14,234.33 to complete the project) when the promise made by Mr. Hall was to do it all for only $24,394."  The court denied Hall's request to offset the restitution amount by his $1,800 in labor costs "because labor costs were clearly part of the original contract and certainly included in the $21,953 [that R.A.] paid to [Hall] directly."

¶13     Hall argues that the circuit court erred in calculating R.A.'s restitution award in two respects.  First, Hall contends that the court erred by including the $5,800 that R.A. paid to Yapp.  Second, he contends that the court erred by denying Hall's request to offset the restitution award by $1,800 for the value of Hall's labor toward completion of R.A.'s project.

¶14     Hall contends that R.A. did not meet his burden to prove that R.A.'s $5,800 payment to Yapp was attributable to Hall's criminal conduct.  Hall contends that R.A. failed to present any evidence that Hall owed and failed to pay Yapp an additional $5,800 for work on R.A.'s project.  Hall points to his testimony that he paid Yapp in full for his work on R.A.'s project and his offer of cashed checks showing that he paid Yapp $4,794.  Thus, Hall contends, R.A.'s $5,800 payment to Yapp is attributable to R.A.'s failure to verify that Yapp was in fact owed an additional $5,800, not to Hall's criminal conduct, "and the criminal

5

restitution statute cannot be enlisted to remedy it." *See **Longmire***, 272 Wis. 2d 759, ¶26.

¶15    Hall also contends that the circuit court erred by denying Hall's request for an offset of $1,800 for his labor costs towards completion of R.A.'s project. He points to the rule under which R.A. is "not … entitled to recover any sums [that Hall] actually expended on the project." *See **id.***, ¶20. Rather, Hall asserts, Hall "is entitled to an offset for amounts he expended for work done." *See **id.***, ¶21. Hall contends that he met his burden to prove that he performed $1,800 worth of direct labor on R.A.'s project, entitling him to an offset of that amount. Hall directs us to his log of work hours that he submitted, and points out that R.A. did not dispute Hall's assertion of the amount and value of the work that Hall claims to have performed. Hall contends that the court's decision violates the requirement under ***Longmire*** that Hall receive an offset for his expenditures.

¶16    The State responds that the evidence at the restitution hearing established a "causal nexus" between Hall's crime and R.A.'s payment to Yapp. *See **State v. Canady***, 2000 WI App 87, ¶9, 234 Wis. 2d 261, 610 N.W.2d 147. It points to evidence that Yapp was a subcontractor on the project and that R.A. paid Yapp $5,800. It also cites R.A.'s testimony that Yapp should have been paid from the funds that R.A. paid to Hall. The State contends that there was sufficient proof that Hall's crime of theft by contractor set into motion the events that led to R.A.'s payment to Yapp, *see **State v. Rash***, 2003 WI App 32, ¶7, 260 Wis. 2d 369, 659 N.W.2d 189, and that it was Hall's burden to show that there should be any reduction of the $5,800 in the restitution award based on Hall's claim that he already paid Yapp $4,794, *see **Longmire***, 272 Wis. 2d 759, ¶16. According to the State, if R.A.'s $5,800 payment to Yapp was an overpayment, Hall might be entitled to pursue a civil claim against Yapp, but is not entitled to a reduction in

6

the amount of restitution owed to R.A. *See State v. Sobkowiak*, 173 Wis. 2d 327, 341, 496 N.W.2d 620 (Ct. App. 1992) (defendant not entitled to offset in restitution award of amount he could recover in a civil action).

¶17    The State also contends that Hall is not entitled to an offset of $1,800 against restitution for his labor costs on the project. According to the State, the court reasonably found that Hall's $1,800 in labor costs were included in the funds that R.A. already paid to Hall, and that allowing Hall an offset for his $1,800 in labor costs would allow him to recover those costs twice.

¶18    Finally, the State contends that Hall's claim for an offset for his labor costs fails to recognize the "framework" that the circuit court used to calculate restitution to R.A. Under that framework, the court found that R.A. had paid a total of $36,187.33 on a project that Hall had promised to complete for $24,394, resulting in R.A. paying $11,793.33 more than Hall promised it would cost him. The State asserts that the court "reasonably" found that Hall had $11,793.33 in recoverable losses based on the difference between the amount that R.A. paid in total for his project and the amount Hall had promised that the project would cost.

¶19    In reply, Hall contends that neither the total amount that R.A. paid for his project nor the total amount that Hall promised the project would cost are relevant to the restitution analysis because R.A. did not pay either of those amounts to Hall.[2]    Rather, Hall asserts, the proper framework for the restitution

_____

[2] Hall does not make this specific argument in his brief-in-chief, but instead raises it in his reply brief. We ordinarily do not address issues raised for the first time in a reply brief. *See Schaeffer v. State Pers. Comm'n*, 150 Wis. 2d 132, 144, 441 N.W.2d 292 (Ct. App. 1989). Here, however, the State asserted in its respondent's brief that the circuit court's "framework" for calculating restitution—the difference between the amount R.A. paid in total for his project and

(continued)

award is the portion of the payment that R.A. made to Hall, which Hall then converted to his own use. *See Longmire*, 272 Wis. 2d 759, ¶¶18-19 (victims in theft-by-contractor case were entitled to restitution in the amount of the funds that they paid to the defendant which were not expended on the project, because "'damages for conversion is the value of items wrongfully taken'" (quoted source omitted)). Thus, Hall asserts, R.A. is entitled to restitution for the difference between the amount that R.A. paid to Hall and the amount that Hall actually expended on R.A.'s project. *See id.*, ¶18 (concluding that the circuit court erroneously exercised its discretion by not allowing any offset for the defendant's "undisputed expenditure of a portion of the deposit money in compliance with his contractual obligations").

¶20 Hall contends that the record shows that he actually expended $15,228 of the $21,953 that R.A. paid to him on R.A.'s project. Hall reaches this amount by adding together: the $8,634 that Hall spent on materials; the $4,794 that Hall paid to Yapp; and the $1,800 that Hall expended in his own labor.[3] Hall argues that none of these claimed expenses were disputed at the restitution hearing and that the State does not now dispute them on appeal. Thus, Hall contends, R.A. is entitled to restitution of $6,725, which he contends is the amount that R.A. paid to Hall that was not applied to R.A.'s project.

---

the amount Hall promised the project would cost—was "reasonable." We deem the issue to have been sufficiently identified by the State by the time it filed its brief to allow us to address it.

[3] In the appellant's brief, Hall states that the total amount he paid to Yapp was $4,794. In the reply brief, Hall changes that amount to $4,798. Hall uses the $4,798 amount in his calculations in the reply brief. However, the cashed checks from Hall to Yapp that were submitted at the restitution hearing total $4,794, as stated in Hall's brief-in-chief. We use $4,794 as the amount that Hall claimed to have paid Yapp in the calculations in this opinion, adjusting the amounts stated by Hall in the reply brief to account for the discrepancy.

¶21 We conclude, first, that the circuit court erred by calculating R.A.'s restitution as the difference between the total cost of R.A.'s project and the amount that Hall promised the project would cost. In *Longmire*, 272 Wis. 2d 759, ¶23, we specifically held that, even if costs incurred to correct a contractor's shoddy work could have been recovered in a separate civil action for breach of contract, they do not constitute "special damages" and "are not recoverable as a separate item of restitution under WIS. STAT. § 973.20(5)(a)." Just as the homeowners' remediation costs were not recoverable in *Longmire*, R.A. cannot recover the amount he paid to complete his project above what Hall promised him the project would cost. As in *Longmire*, the criminal conduct considered at sentencing was Hall's conversion of funds paid toward the project, not any alleged breach of contract. *See id.*, ¶¶23-24. The only pecuniary loss R.A. suffered as a result of Hall's criminal conduct was the loss of money that R.A. paid to Hall which Hall did not expend toward R.A.'s project. *See id.*, ¶19 (explaining that the amount of damages for conversion is the value of items wrongfully taken). Thus, under § 973.20(5)(a), R.A. is entitled to recover the funds that Hall wrongly converted to his own use, but he is not entitled to recover those amounts he paid to complete his project.

¶22 Here, the circuit court awarded restitution to R.A. in the amount that R.A. paid in total to complete his project over the amount that Hall promised the project would cost, rather than the amount that R.A. paid to Hall that Hall converted to his own use. The court therefore erred in calculating the restitution Hall owed to R.A.

¶23 We conclude, next, that the circuit court did not make sufficient factual findings that would allow us to calculate the amount of restitution due to R.A. While the parties argue extensively about the amounts that R.A. and Hall

expended on the project, and which party had the burden of proof as to items of restitution and any offset of restitution, the court did not make findings of fact on those points relevant to the amounts that R.A. paid to Hall and that Hall actually expended on the project.

¶24 For example, the parties agreed at the restitution hearing that Hall used $8,634 of the money that R.A. paid him toward materials for R.A.'s project. The circuit court noted the $8,634 in material receipts, but did not use that amount in calculating restitution and therefore made no finding as to that amount. Hall also submitted cashed checks showing that he made payments to Yapp totaling $4,794, but the court did not consider that amount in calculating restitution and therefore made no finding as to those payments. Finally, Hall requested an offset of $1,800 for his own labor costs. The court denied any offset for labor expenditures, finding only that Hall's "labor costs were clearly part of the original contract and certainly included in the $21,953 [R.A.] paid to him directly."

¶25 Additionally, the parties argue extensively over the $5,800 that R.A. claimed that he paid to Yapp, and who has the burden of proof as to that amount for purposes of restitution. Hall takes the position that he paid Yapp in full for his work on the project, and that Yapp fraudulently claimed that R.A. owed him an additional $5,800 to which he was not entitled. From that premise, Hall argues that R.A. failed to meet his burden to prove that Hall's criminal conduct of theft by contractor caused R.A. to overpay Yapp. The State, in turn, contends that R.A. met his burden to prove a causal nexus between Hall's crime and R.A.'s payment to Yapp because R.A. showed that: (1) Yapp was a subcontractor hired by Hall to work on R.A.'s project; (2) Hall should have paid Yapp $5,800 for work completed out of the funds R.A. paid to Hall, but Hall did not do so; and (3) R.A. made the $5,800 payment to Yapp. The State argues that the burden therefore

shifted to Hall to prove that Hall was entitled to a reduction of the $5,800 of restitution, and that Hall did not meet that burden. It contends that, assuming that Hall has shown that the $5,800 that R.A. paid to Yapp was an overpayment, Hall would still have the burden to pay that amount of restitution to R.A. to make him whole. However, following the restitution hearing, on these topics the circuit court found only that Hall failed to fulfill his contract with R.A. and R.A. therefore "had to pay … Yapp[] an additional $5,800" to complete the project. Significant to our analysis, the court did not make any findings as to the amount that Hall had already paid to Yapp or the total value of the work that Yapp performed on the project.

¶26　Accordingly, based on the absence of sufficient factual findings, we are unable to determine the amount of funds that R.A. paid to Hall that Hall then converted to his own use.

¶27　Based on the foregoing, we conclude that the circuit court erred in its calculation of restitution owed to R.A. and that the facts in the record are insufficient for us to calculate the proper amount of restitution to R.A. We therefore remand for the court to make necessary factual findings and calculate the proper amount of restitution due to R.A. *See **State v. Stowers***, 177 Wis. 2d 798, 807, 503 N.W.2d 8 (Ct. App. 1993) ("[B]ecause the [restitution] order impermissibly mixed general and special damages and the amount of restitution ordered was not supported by sufficient evidence in the record, we reverse and remand to the court for the purpose of holding a new restitution hearing.").

*J.S.*

¶28　Hall contracted with J.S. to remodel a basement for $15,255, and J.S. paid Hall that amount up front. Hall completed about 70% of the project,

11

including work by a subcontractor, Dixon Drywall. At some later point, Dixon Drywall filed a lien on J.S.'s house for $6,427.50, for work that Dixon Drywall had done on the project. J.S. requested restitution for the value of the work that Hall did not complete on the project, $4,039.30, plus the $6,427.50 lien on his house by Dixon Drywall, for a total of $10,466.80.

¶29    Hall submitted copies of money orders totaling $2,000, payable to Dixon Drywall, after Dixon Drywall provided the notice of lien to J.S.

¶30    The circuit court found that there was no proof that Dixon Drywall had received or cashed the $2,000 in money orders from Hall. However, after the restitution hearing, the State conceded that Dixon Drywall had received $1,000 from Hall, presumably as a partial payment for the work that Dixon Drywall did on J.S.'s project. The court therefore awarded J.S. the $4,039.30 for services not completed, plus $5,427.50 toward the lien, for a total of $9,466.80.

¶31    Hall argues that the circuit court erred by ordering Hall to pay J.S. $5,427.50 toward the Dixon Drywall lien. Hall concedes that Dixon Drywall was a subcontractor on J.S.'s project, and that Hall failed to pay Dixon Drywall for work it completed out of funds that J.S. paid to Hall. Hall contends, however, that J.S. failed to meet his burden to prove that Hall owes J.S. $5,427.50 for the lien on his house. He contends that J.S. presented no proof of the amount remaining on the lien at the time the court made its restitution determination. He points to copies of money orders he submitted at the restitution hearing, made out to Dixon Drywall, totaling $2,000. He argues that the court erred by shifting the burden of proof to Hall to prove that Dixon Drywall received and cashed the money orders.

¶32    The State responds that J.S. met his burden to prove that Dixon Drywall had a lien of $6,427.50 on his house by submitting a copy of the lien and

testifying that the lien was still in place as of the time of the restitution hearing. It argues that Hall had the burden to prove that he was entitled to any reduction in that amount, and that he failed to do so. The State points out that the circuit court found that Hall presented "inadequate proof" and had "low testimonial credibility" regarding his purported payments to Dixon Drywall. The State also asserts that Hall failed to prove that any payments that Hall made to Dixon Drywall were applied to reduce the lien amount on J.S.'s home, and that Hall was therefore still obligated to pay the amount of the lien to J.S.

¶33 We agree with the State that J.S. met his initial burden to prove a causal nexus between Hall's crime and Dixon Drywall's lien on J.S.'s house. J.S. offered evidence, credited by the circuit court, that: J.S. paid Hall in full for the project; Dixon Drywall worked on the project but was not paid from the funds that J.S. paid to Hall; and Dixon Drywall therefore obtained a lien against J.S.'s house for $6,427.50. That evidence, when credited by the court, was sufficient to meet J.S.'s burden to show that he was entitled to restitution in the amount of the lien.

¶34 We also agree with the State that Hall failed to prove that he was entitled to a reduction of the full $2,000. Recall that, after the restitution hearing, the State conceded that Hall had paid Dixon Drywall $1,000 toward the lien. The remaining dispute, then, is whether Hall proved that he was entitled to a reduction of another $1,000 of restitution to J.S. We conclude that he did not.

¶35 We defer to the circuit court's credibility determinations and will not disturb its factual findings unless they are clearly erroneous. *Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 390, 588 N.W.2d 67 (Ct. App. 1998). Here, we have no basis to disturb the court's finding that there was insufficient proof that Dixon Drywall received the full $2,000 in money orders from Hall. We

13

conclude that the court properly exercised its discretion as to the restitution award to J.S.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.